John S. WALDO, et al.

v.

LAKESHORE ESTATES, INC., et al.

Civ. A. No. 76–1082.

United States District Court,
E. D. Louisiana.

Feb. 15, 1977.

Winston W. Riddick, Sr., Marion Weimer, Woodrow W. Wyatt, Baton Rouge, La., for plaintiffs.

W. Eric Lundin, III, Duke & Porterie, New Orleans, La., for Charles Caplinger & Associates.

Malvern F. Driscoll, New Orleans, La., for Luke A. Petrovich and Ralph V. Pausina.

Melvin J. Giepert, New Orleans, La., for Anthony S. Latino.

Edward J. Gaidry, Gaidry & Sundbery, Houma, La., for Terrebonne Bank & Trust Co.

Donald A. Meyer, Shushan, Meyer, Jackson, McPherson & Herzog, New Orleans, La., for Thomas Smith and Bank of St. John.

John D. Lambert, Jr., Delbert G. Talley, Lambert, Nowalsky, Lambert, New Orleans, La., for Project One Development Corp., Harold J. Smith, Gasper Schiro and Frank J. Bertucci.

Michael J. Power, B. J. Trombatore, Trombatore & Vondenstein, Kenner, La., for Delta Sav. & Loan Assn.

Danny J. Lirette, St. Martin & Ellender, Houma, La., for Progressive Bank & Trust.

Frans J. LaBranche, Jr., New Orleans, La., for Century National Bank.

Charles R. Maloney, New Orleans, La., for intervenors, Charles R. Maloney and Catherine Maloney.

## MEMORANDUM OPINION AND ORDER

BOYLE, District Judge:

This litigation stems from the purchase of a number of lots of real estate in the Lac Des Allemands Recreational Community of St. John's Parish, Louisiana, and, specifically, from factual misrepresentations and other irregularities said to have occurred in connection therewith. The named plaintiffs are six individual lot-purchasers and

the Lac Des Allemands Property Owners Association, a non-profit corporation purporting to represent some 150 other persons who bought lots.

Plaintiffs proceed against various financing institutions as well as real estate agencies and agents alleged to have participated in the purchase transactions. Two of the six causes of action urged arise under federal statutory law, i. e., the Interstate Land Sales Full Disclosure Act (15 U.S.C. § 1701 et seq.) and the Securities Act of 1933 (15 U.S.C. § 77a et seq.). The remaining causes are state claims of securities law violations, recission based on fraud and/or mistake and redhibition.[1] The suit is brought as a class action, and the named plaintiffs have moved to maintain it as such on behalf of all persons who bought lots in the development under circumstances enabling them to pursue the causes of action set forth in the complaint, and specifically including those who made purchases relying in good faith upon the defendants' alleged misrepresentations. See Plaintiffs' Motion to Maintain Class Action [Rec.Doc. # 38].

Prior to the filing of the motion to certify, one of the defendants, Century National Bank, moved to dismiss the suit on the grounds of an alleged violation by plaintiffs and/or their counsel of Rule 2.12e of the rules of this court. The rule provides as follows:

2.12 Class Actions

. . . . .

 e. In every potential and actual class action under Rule 23, F.R.Civ.P., all parties thereto and their counsel are hereby forbidden, directly or indirectly, orally or in writing, to communicate concerning such action with any potential or actual class member not a formal party to the action without the consent of and approval of the communication by order of the court. Any such proposed communication shall be presented to the court in writing with a designation of or description of all addresses and with a motion and pro-posed order for prior approval by the court of the proposed communication and proposed addresses. The communications forbidden by this rule, include, but are not limited to, (a) solicitation directly or indirectly of legal representation of potential and actual class members who are not formal parties to the class action; (b) solicitation of fees and expenses and agreements to pay fees and expenses from potential and actual class members who are not formal parties to the class action; (c) solicitation by formal parties to the class action of requests by class members to opt out in class actions under subparagraph (b)(3) of Rule 23, F.R. Civ.P.; and (d) communications from counsel or a party which may tend to misrepresent the status, purposes and effects of the action, and of actual or potential court orders therein, or may create impressions tending, without cause, to reflect adversely on any party, any counsel, the court, or the administration of justice. The obligations and prohibitions of this rule are not exclusive. All other ethical, legal and equitable obligations are unaffected by this rule.

This rule does not forbid (1) communications between an attorney and his client or a prospective client, who has on the initiative of the client or prospective client consulted with, employed or proposed to employ the attorney, or (2) communications occurring in the regular course of business or in the performance of the duties of a public office or agency (such as the Justice Department) which do not have the effect of soliciting representation by counsel or misrepresenting the status, purposes or effect of the action and orders therein. Nor does the rule forbid communications protected by a constitutional right. However, in such instances the person making the communication shall within five days after such communication file with the court a copy of such communication, if in writing, or

---

1. For present purposes, these claims are assumed cognizable under our pendent jurisdiction.

an accurate and substantially complete summary of the communication if oral.

Century National contends that the minutes of a meeting conducted by the plaintiff organization on April 3, 1976, along with a written summarization of this lawsuit, were mailed to both members of the organization and non-members. *See* Minutes/Summary, attached as Appendix hereto. It argues that this mailing constituted an attempt to solicit and promote participation in the suit, contravening the directive of the local rule against any unapproved communication concerning an actual or intended class action by all parties thereto or counsel with actual or potential class members.

We referred the matter for hearing and report to United States Magistrate James D. Carriere as a Special Master pursuant to Rule 53 of the Federal Rules of Civil Procedure, instructing him to also make recommendations regarding what sanctions should be imposed in the event the rule was found to have been violated. *See* Order of Reference of July 22, 1976 [Rec.Doc. # 43].[2] In a preliminary conference with the Magistrate, all parties agreed that further proceedings in this court—including, of course, our consideration of the certification question—should be stayed pending the Master's report and recommendations. *See* Magistrate Carriere's Minute Entry of August 10, 1976 [Rec.Doc. # 52]. Nonetheless, it has now become necessary for us to decide an issue raised herein without awaiting the outcome of the Special Master's investigation, for the plaintiffs have filed a motion to have Local Rule 2.12e declared invalid as violative of the First and Fifth Amendments to the Constitution and/or exceeding the court's statutory rule-making authority, and to have all proceedings relative to the alleged violations of the rule stayed pending a disposition of their motion.

Since the instant motion was filed, no further proceedings have been scheduled before the Special Master. Considering the prayer for a stay thus mooted, we proceed to the issue of the local rule's validity. In so doing, the justiciability of that issue necessarily is acknowledged. A court acting in its adjudicative capacity may hear a challenge to the legitimacy of a rule it has promulgated pursuant to the quasi-legislative function of regulating the practice of law at bar. Moreover, such a challenge may be brought by one assertedly having violated the rule, and the rule may not stand if found to violate the constitutional or other substantive rights of the challenging party. *See In re Oliver,* 452 F.2d 111 (7 Cir. 1971).

In this regard, it also should be noted that Local Rule 2.12e does operate to limit the exercise of certain rights otherwise guaranteed by the First Amendment. Its application to the proceeding at hand restricts not only certain expressions by parties and counsel, but also impinges upon the constitutionally-derived interest of the recipient(s) to secure the communication. *See Procunier v. Martinez,* 416 U.S. 396, 408, 94 S.Ct. 1800, 1809, 40 L.Ed.2d 224 (1974).[3] Likewise limited by the rule's operation is the opportunity of the plaintiff organization to communicate concerning legal redress with those members who are not formal parties to the suit, which activity ordinarily would be entailed in the freedom of association and the collective right of an organizational membership to achieve effective judicial access. *See Brotherhood of Railroad Trainmen v. Virginia,* 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1969). Inasmuch as the rule's prohibition herein affects non-member recipients of communications as well, it also has an impact upon their own individual rights to assemble and petition for redress of grievances.

2. Following the entry of this order, plaintiffs moved to assert a violation of Rule 2.12e by the defendant Century National, and to include this allegation within the scope of the Special Master's investigation. The motion was referred for disposition to Magistrate Carriere, by whom it was granted. *See* Order of Reference of August 24, 1976 [Rec.Doc. # 61]; Magistrate Carriere's Minute Entry of September 1, 1976 [Rec.Doc. # 63].

3. Without deciding, we assume for present purposes that movants have standing to assert these rights.

But it is beyond peradventure that First Amendment freedoms are not absolute, and are properly limited pursuant to sufficiently important governmental interests. *See Theriault v. Carlson,* 495 F.2d 390, 394 (5 Cir.), *cert. denied,* 419 U.S. 1003, 95 S.Ct. 323, 42 L.Ed.2d 279 (1974). Constitutionally protected freedom of speech is "narrower than an unlimited license to talk," the jurisprudence on the one hand placing certain speech beyond the scope of the First Amendment and, on the other, regulating the unfettered exercise (as opposed to the actual content) of speech where justified by valid governmental policy. *See Konigsberg v. State Bar of California,* 366 U.S. 36, 50–51, 81 S.Ct. 997, 1006–07, 6 L.Ed.2d 105 (1961). In the latter category of cases, the authority of the Government to impose reasonable regulations as to the time, place and manner of First Amendment expression is considered axiomatic. *See Carlson v. Schlesinger,* 167 U.S.App.D.C. 325, 511 F.2d 1327, 1331 (1975) and cases cited therein.

Thus, it is not sufficient to simply recognize the range of First Amendment rights which are affected by the enforcement of Rule 2.12e. Our task is to assay the interests served by the rule and weigh these against the deprivations of free speech, association and/or judicial access which necessarily accompany the rule's enforcement. The importance attached to these freedoms, however, requires that the governmental interests being weighed in balance be "compelling" and be furthered only by regulation drawn with "narrow specificity." *See N.A.A.C.P. v. Button,* 371 U.S. 415, 433, 438, 83 S.Ct. 328, 338, 341, 9 L.Ed.2d 405 (1963). The restriction of rights guaranteed by the First Amendment is only justified by "clear public interest, threatened not doubtfully or remotely but by clear and present danger." *See Thomas v. Collins,* 323 U.S. 516, 530, 65 S.Ct. 315, 323, 89 L.Ed. 430 (1945). The substantive "evil" at which regulation is directed must be "extremely serious" and the degree of its imminence "extremely high." *See Bridges v. State of California,* 314 U.S. 252, 263, 62 S.Ct. 190, 194, 86 L.Ed. 192 (1941).

As a preliminary step in our analysis under these standards, we must consider whether Local Rule 2.12e constitutes a "prior restraint" on free expression, as that phrase traditionally has been construed to impose upon the prohibition so designated a "heavy presumption" against its validity. *See Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 2802, 49 L.Ed.2d 683 (1976) and cases cited therein. Guidance in this determination is provided by the Seventh Circuit decision in *Chicago Council of Lawyers v. Bauer,* 522 F.2d 242 (7 Cir. 1975), *cert. denied sub nom., Cunningham v. Chicago Council of Lawyers,* 427 U.S. 912, 96 S.Ct. 3201, 44 L.Ed.2d 1204 (1976). There, a First Amendment challenge was brought by certain attorneys to a local criminal rule of the District Court for the Northern District of Illinois and to a Disciplinary Rule of the American Bar Association's Code of Professional Responsibility, both forbidding them as lawyers from making extrajudicial, public comments on pending or imminent criminal proceedings which might interfere with a fair trial. The court noted that, despite the feature of punishment by contempt common to both "prior restraints" and the rules in question, there was a critical distinction to be made:

> Normally a 'prior restraint' constitutes a predetermined judicial prohibition restraining specified expression and it cannot be violated even though the judicial action is unconstitutional if opportunities for appeal existed and were ignored [citation omitted]. The validity of court rules, however, can be challenged by one prosecuted for violating them since we have held that there is a fundamental distinction in this regard between actions taken by the court in its legislative role and those taken in its adjudicative role [citation omitted].

*Id.* at 248. Accordingly, while aware of the need to scrutinize the rules more closely than it would a legislative restriction, the court declined to examine them with a "heavy presumption" against their validity. *See id.* at 248–49.

We likewise perceive a distinction between the prohibition of Local Rule 2.12e and what is ordinarily regarded as a "prior restraint" on speech. To begin with, the rule's general prohibition of unauthorized communication is coupled with a proviso which, in our view, allows such expression as is assertedly protected by the First Amendment to be made free of prior restraint by the court. *See* p. 792, *infra.* Furthermore, as in the *Bauer* case, a violation of this rule does not *per se* entail immediate or irreversible punishment, by contempt or otherwise. The instant motion itself indicates that the rule's validity may be challenged by one charged with violating its provisions. Nor would the opportunity to bring such a challenge be foreclosed were a violation already established. Our inquiry, then, does not proceed on the basis of the local rule's assumed constitutional infirmity as a "prior restraint."[4]

Rule 2.12e is drawn *verbatim* from a "suggested local rule" in the Manual for Complex Litigation, a publication designed to facilitate procedures for the handling of class actions and other complex matters. *See* Appendix to Part 2, § 1.41, Manual for Complex Litigation, at p. 145 (1973 ed.) [hereinafter Manual].[5] The Manual itself,

then, is an appropriate reference to the potential abuses of the class action procedure which Rule 2.12e purports to eliminate: solicitation of legal representation and/or fund contributions directed to those not formal parties to the action, solicitation of opting out of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure and misrepresentation of the status, purpose or effect of the action. *See* Manual, at p. 22.

Considering first the possible solicitation of representation and/or funds, we regard regulation aimed at preventing such an abuse as promotive of both the public's and the legal profession's interests. Not only does curbing solicitation by less than scrupulous attorneys serve those laymen liable to be unfairly badgered and/or persuaded by the activity, but it also protects the reputation and professional image of the bar itself. The local rule expressly states that its prohibitions are separate from and in addition to ethical obligations; but furtherance of the same public and professional interests is the aim of those disciplinary rules enacted by the state and national bar associations which prohibit advertising and solicitation.[6] The need to bal-

4. A different conclusion would not necessarily be dispositive, since any such presumption is rebuttable. Capacity for, or the extent of, the "target evil" may in some cases warrant regulation which consists of a prior restraint of speech. *See Times Film Corporation v. City of Chicago,* 365 U.S. 43, 47–49, 81 S.Ct. 391, 393–95, 5 L.Ed.2d 403 (1961).

5. The draft of a revised version of the Manual recently was circulated among all federal judges, but it appears that the language of the suggested rule will remain unchanged in the new edition. *See* Appendix to Part II, § 1.41, Tentative Draft of Fourth Revision of Manual for Complex Litigation with Revisions to July 21, 1976, at pp. 188–189 [hereinafter Draft Manual].

We note that other district courts likewise have adopted the proposal of the Manual by enacting local rules prohibiting unapproved communications to class members by the parties or counsel in the action. *See* Note, "Developments in the Law—Class Actions," 89 *Harv. L.Rev.* 1318, 1597 n.81 (1976).

6. The Louisiana State Bar Association and the American Bar Association each has enacted a

Code of Professional Responsibility virtually identical to the other in the treatment of professional solicitation and advertising. Thus, both codes contain a disciplinary rule generally prohibiting a lawyer from publicizing himself, or allowing himself to be publicized, as one offering legal services. *See* DR 2–101(B), ABA Code of Professional Responsibility; DR 2–101(B), La.State Bar Ass'n Code of Professional Responsibility [Art. 16, La. St. Bar Ass'n Articles of Incorp., LSA-R.S. 37, ch. 4 App.]. Both also set forth rules prohibiting an attorney from recommending his employment as a private practitioner to one who has not sought out his services, from requesting a person or organization to recommend the use of his services as a private practitioner, or from knowingly assisting a person or organization that pays others to promote the use of his services. *See* DR 2–103(A), (C) & (D), ABA Code of Professional Responsibility; DR 2–103(A), (C) & (D), La. State Bar Ass'n Code of Professional Responsibility [*id.*]. Finally, both codes forbid a lawyer who has solicited business from accepting employment as a result thereof. *See* DR 2–104(A), ABA Code of Professional Responsibili-

ance regulatory measures in this area against First Amendment guarantees continues to be the subject of judicial scrutiny, as it remains true that the Government cannot invoke its power to regulate the professional conduct of its attorneys at the expense of the individual's free expression or the public's right to fair legal representation. *See N.A.A.C.P. v. Button, supra,* 83 S.Ct. at 341; *Brotherhood of Railroad Trainmen v. Virginia, supra,* 84 S.Ct. at 1117.[7] But such traditional self-governance by the bar, both nationally and locally, reflects its own judgment that the service of professional and public interests outweighs the resulting restriction of free expression.

Local Rule 2.12e is at least in part prompted by the same appraisal. It is one we find all the more compelling in the class action framework, given the heightened susceptibilities of nonparty class members to solicitation amounting to barratry as well as the increased opportunities of the parties or counsel to "drum up" participation in the proceeding. Moreover, it is likely that uninvited and unapproved communications to this effect "may appear [to the party solicited] to be an authorized activity approved by the court, simply by reference to the title of the court, the style of the action, the name of the judge, and to official processes." *See* Manual at 22.

 An additional interest affecting the court becomes relevant in considering the potential solicitations of counsel or parties which invite other parties to opt out of a proceeding maintained as a class action under Federal Rule 23(b)(3). Rule 23 expressly provides that, once a 23(b)(3) class action has been allowed to proceed, it remains the special province and responsibility of the court to direct the "best notice

practicable" to class members, advising them of their privilege to exclude themselves from the class. *See* Rule 23(c)(2), Fed.R.Civ.Pro. In this way will individual interests be safeguarded by the court in the context of a proceeding intending to have common claims adjudicated; and, with the opportunity to opt out upon receiving proper notice, individuals may avoid being bound by a class-wide judgment that otherwise would preclude them from litigating their claims separately. The Advisory Committee Notes which accompany Rule 23 indicate that this court-directed notice of the opportunity to opt out purports to fulfill the requirements of Due Process. *See* Notes of the Advisory Committee following Fed.R.Civ.Pro. 23, at 302, Title 28, U.S. Code. Unauthorized notice issuing from counsel or parties to the action usurps the authority of the court to enforce such fundamental requirements and the policy of Rule 23. Considering the possible confusion resulting from notice that is less than complete in its terms, and the possible prejudice caused by notice less than accurate in its representations, effective management of the judicial process may be directly jeopardized. It is well-settled that courts may reasonably protect the integrity of their proceedings by limiting activities ordinarily protected by the First Amendment. *See Dorfman v. Meiszner,* 430 F.2d 558, 561 (7 Cir. 1970). *See also Polk v. State Bar of Texas,* 374 F.Supp. 784, 788 (N.D.Tex.1974).

 Unapproved communications to class members that misrepresent the status or effect of the pending action also have an obvious potential for confusion and/or adversely affecting the administration of jus-

---

ty; DR 2–104(A), La. State Bar Ass'n Code of Professional Responsibility [*id.*].

The state goes one step beyond ethical sanctions to enforce its policy against solicitation. Louisiana statutory law prohibits any person or business from soliciting employment for a legal practitioner, and imposes criminal penalties (fine or imprisonment) for violations. *See* LSA-R.S. 37:213.

**7.** Last October, the United States Supreme Court granted review of a decision by the Ari-

zona Supreme Court that Disciplinary Rule 2–101(B) of the ABA Code of Professional Responsibility (*see* note 6, *supra* ), prohibiting the advertising of services by attorneys, does not violate the First Amendment. *See Bates v. Arizona State Bar,* 429 U.S. 813, 97 S.Ct. 53, 50 L.Ed.2d 73 (1976). *See also* "Supreme Court Will Hear Lawyers' Advertising Case from Arizona," *ABA Journal,* vol. 62, at 1422 (Nov. 1976).

tice.[8] Particularly should such communications seem vested with official authority, there arises not only the risk of subsequent disenchantment with the judicial process, but also the danger that individuals will be induced to act to their detriment in reliance upon misinformation and/or falsehoods. Thus entailed in this abuse is something more than a general interest in orderly process which is shared by the court and the public; there is the added interest of the individual in achieving a full and fair judicial remedy. To this extent, it is important to recognize the need for restricting free expression where such presents a "reasonable likelihood" of endangering the individual's constitutional guarantee of a fair trial. *See* Manual, at 22 n.28.

 Our conclusion that a sufficiently important objective is served by Local Rule 2.12e does not rest upon cognizance of the dangers of solicitation alone,[9] or of improper class notice alone, or of misrepresentations alone. It is all such abuses, considered together and viewed in the context of the unique class action procedure, which contribute to the finding that this local rule effectuates a compelling and substantial governmental interest, one rooted in the judiciary, the bar and the public at large. Furthermore, we are satisfied that the potential ills cited in the Manual for Complex Litigation are far from remote or theoretical. The documented experiences of other courts justify a finding that the incidence of abuse in the class action setting is unfortunately high. *See* Manual, at 24–25; Draft Manual, at 40–44.

 Yet, governmental regulation— even in the pursuit of important objec- tives—must not unnecessarily restrict constitutionally protected activity or ignore other reasonable approaches which are available to achieve the same goals without burdening such activity. *See Dunn v. Blumstein,* 405 U.S. 330, 343, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274 (1972). It thus remains for us to determine whether freedoms protected under the First Amendment are needlessly restrained by the operation of Rule 2.12e. In order to comport with the due process requirement of the Fifth Amendment, the local rule may not "sweep unnecessarily broadly," and must be viewed in the light of "less drastic means for achieving the same basic purpose." *See Aptheker v. Secretary of State,* 378 U.S. 500, 508, 84 S.Ct. 1659, 1665, 12 L.Ed.2d 992 (1964); *Chicago Council of Lawyers v. Bauer,* supra, at 249.

 The plaintiffs observe that the first portion of the rule flatly prohibits *all* unauthorized communications, and that the succeeding listing of four potential abuses *via* such communications does not limit the scope of the prohibition, the list being illustrative only and not intended as exhaustive. We find no merit, however, in the suggestion that specifically listed abuses ought be matched with specific prohibitory rules, as opposed to an across-the-board restriction. As a practical matter, it is extremely dubious that the local rule could be drafted so as to exhaustively define potential abuses of the class action device through unauthorized communication with class members. Unfortunately, the ingenuity of those determined to wrongly take advantage of the class action procedure would likely prevail over any such attempt at prohibition by

---

8. In the case at bar, we note that the minutes of the plaintiff organization contain several patent misrepresentations of the suit's status and effect. The minutes, purporting to be of a meeting held on April 3, 1976, state that the suit was filed on April 5, 1976. In fact, the action was filed on April 7. Moreover, declarations are made to the effect that there is an "overwhelming" possibility the plaintiffs will prevail and that the contingency fee arrangement is only made by "attorneys who are certain to win. . . ." *See* Minutes/Summary, attached as Appendix hereto.

9. Broad regulatory prohibitions aimed at preventing such evils of improper solicitation as "barratry, maintenance and champerty" have been stricken down by the Supreme Court as overly-restrictive of First Amendment freedoms. *See N.A.A.C.P. v. Button, supra,* 83 S.Ct. at 340–344. We consider our local rule as addressing a far more inclusive range of abuses.

itemization. The end result would be instances of compliance with the letter of the rule even as the spirit of effective regulation was flouted. Albeit "less drastic," therefore, this approach fails to accomplish the same basic purpose as does the rule in its present form.[10]

■ We further note that the general directive of Rule 2.12e subjecting all communications to prior court approval is not unqualified. The rule's second paragraph sets forth two exceptions: communications between an attorney and one who has initiated contact with him concerning the employment of his services, and communications in the course of the business of a public office or agency which do not have the effect of solicitation or misrepresentation. The latter language properly recognizes that communications such as those emanating from attorneys general or other legal officials should be presumed servient of the public interest rather than potentially abusive of a pending class action. *See* Manual, at 23. To extend the general prohibition of the rule into this area, then, would give 2.12e too wide a sweep. The first exception, even broader in its application, leaves unaffected discourse between an attorney and either his actual client or one who has himself sought legal counsel. Thus, the rule safeguards the exercise of First Amendment freedoms in those cases where the attorney's need to solicit and/or advertise is obviated, and where possible misrepresentation of the litigation is a matter relegated to the framework of an existing attorney-client relationship or to the client-initiated process of arms-length bargaining for legal services.

■ The scope of Rule 2.12e is narrowed still further by the express provision that it does not forbid "communications protected by a constitutional right," and that, in such instances, it is required that the communicator within five days file a copy or summarization thereof with the court. Despite the plaintiff's argument that such a provision is meaningless since the "chilling effect" of 2.12e survives, the language is quite significant insofar as it serves to limit the need for prior authorization under the rule. We interpret the provision as allowing the possibility that a party will engage in what he considers constitutionally-protected activity without seeking the prior approval of the court. As is indicated by a pre-trial order entered in a class suit in the United States District Court for the Western District of Missouri, it would be entirely

10. One commentator has suggested other alternatives to a general prohibition such as Rule 2.12e. *See* Note, "Developments in the Law—Class Actions," supra.

On the one hand, it is proposed the court allow direct communication between the class and the class opponent, thus checking the possible abuses of misrepresentations made by the plaintiff side concerning the prospects of the action. *See id.* at 1598–99. Aside from the fact that the problems of solicitation and advertising would persist, this recommendation appears plagued by practical problems far greater than those encountered in the present approach. The same commentator himself acknowledges that the traditional rule requiring communication with the opposing litigant only through the latter's attorney would be contravened. *See id.* at 1599–1600. The evils which this rule purports to avoid—e. g., the undue influencing of unsophisticated litigants—would be exacerbated in a class proceeding, and would be visited upon the very persons the local rule seeks to protect.

A second suggestion advanced is to require the filing of the intended communication with both the court and the opponent prior to dissemination, thus allowing the court to screen the filings and restrain in advance all that are blatantly abusive while directing corrective communications where the abuse is established after the fact. *See id.* at 1601–02. However, the introduction of even the most limited screening process would burden the court further in its handling of a complex matter, and would only serve to effect a "prior approval" mechanism not significantly less drastic than the one which Local Rule 2.12e allows. Common sense would seem to favor the existing requirement that, with a few specific exceptions, all intended communications be submitted to the court and dependent upon its approval prior to dissemination, rather than a requirement that the court immediately screen out communications it deems clearly abusive or else allow them to be sent out. Moreover, in the latter situation, it is hardly certain that "corrective communications" ordered by the court would undo the ill effects of an earlier abuse.

consistent with the Manual rule for the court to direct a procedure whereby a party or counsel can assert a First Amendment right to communicate with the class without any prior restraint, and then do so on the condition he files the communication with the court. *See* Draft Manual, at 38 n.33, 189–90. Pursuant to this construction of Rule 2.12e, we conclude that the risk of its regulatory scope being unconstitutionally overbroad is effectively eliminated.

Our conclusion is not altered by the plaintiffs' reference to the decision in *Rodgers v. United States Steel Corporation,* 508 F.2d 152 (3 Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). There challenged both on constitutional grounds and on the theory it exceeded the court's rule-making authority was Local Rule 34(d) of the Western District of Pennsylvania, prohibiting any communication by any parties or counsel with an actual or potential class member unless the communication first was approved by the court. Only in the process of skirting the constitutional questions and establishing a statutory basis for its conclusion that the rule was invalid, did the majority opinion note a "serious constitutional issue of overbreadth. . . ." *Id.* at 163–64. But even aside from the fact that such an observation is dicta in its decision, the court was careful to distinguish Local Rule 34(d) from the proposed rule in the Manual for Complex Litigation. It was noted that, since the local rule before it contained neither the illustrative list of abuses nor the limiting exceptions found in the Manual rule, there was no occasion for the court to consider whether a rule drafted according to the Manual's proposal would cure the problem of overbreadth. *See id.* at 164 n.18.[11] Moreover, we would agree with the concurring opinion of Judge Weis that the purpose of the Manual's proposed rule broadly prohibiting all communication is itself broad. The objective is not simply to battle barratry, but to prevent other abuses of the class action device as well. *See id.* at 166.

We may dispose briefly of the additional contention that 2.12 also runs afoul of the Fifth Amendment due to vagueness. The local rule, like any law, must be drafted so that a person of ordinary intelligence is given a reasonable opportunity to know what is prohibited, and to act accordingly, particularly where a law that is vague operates to inhibit the exercise of First Amendment rights. *See Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). But Rule 2.12e satisfies this requirement. There should be no confusion in ascertaining the meaning of its reference to "potential" as well as "actual" class actions, since this clearly contemplates the post-certification as well as pre-certification operation of the rule. Equally clear from a common-sense reading of the first sentence are the terms extending coverage to "all parties" to the action, forbidding communication with any class member not a "formal party" and forbidding communication "directly or indirectly." Reasonably clear notice also is accomplished by the specific prohibition of certain "solicitation," by the exemption of communications with a "client or a prospective client" and by the reference back to all previously mentioned exceptions in imposing the requirement that excepted communications be filed with the court.

The second and non-constitutional ground of attack on the validity of Rule 2.12e is that its promulgation exceeds the rule-making authority of the district court. In finding the local rule before it invalid for this reason, the majority in *Rodgers v. United States Steel Corporation,* supra, noted that both statutory sources of the lower court's rule-making power—i. e., Rule 83 of the Federal Rules of Civil Procedure and Section 2071 of the United States Code, Title 28—require that rules enacted not be inconsistent with the Federal Rules of Civil Procedure. *See* 508 F.2d at 163; Rule 83, F.R.Civ.Pro.; 28 U.S.C. § 2071. Confining its attention to the pre-certification applica-

11. Going even further, the concurring opinion of Judge Weis averred that the district court would not be foreclosed from enacting a rule similar to the Manual rule. *See id.* at 166.

tion of the local rule only, the *Rodgers* court held that a prohibition of all unapproved communications involving plaintiffs or their attorneys—even when such communication seeks to encourage common participation in a class suit—was not consistent with the policy of the federal rules favoring the disposition of class claims in a single litigation where feasible. *See id.* at 163–64.

 However, we categorically oppose the notion that a policy allowing unfettered communication to encourage participation in a class suit is consistent with the purpose of Federal Rule 23. The potential abuses attendant upon such unregulated communication clearly undermine the efficacy of the class action device. By proscribing such communications as tend to solicit legal services and/or fund contributions, the rule protects the right of the class membership to judicial redress that is not unnecessarily burdened. By foreclosing unapproved notices of the right to opt out and preventing misrepresentations of the lawsuit's status, purpose or effect, the membership's entitlement to a fair trial is safeguarded. The local rule also comports with the intention of the federal class action rule that there be district court control over the sending of notices to members of the class. *See* 7A Wright & Miller, Federal Practice and Procedure: Civil § 1797, at 239. We therefore regard Local Rule 2.12e as entirely consistent with and in furtherance of the purpose of fully and fairly disposing of class-wide claims and remedying class-wide grievances in a single proceeding.

For the foregoing reasons, the plaintiffs' motion to invalidate Local Rule 2.12e and stay the proceedings before the Special Master relative to the alleged violations of the rule should be, and it is hereby, *DENIED.* The Special Master shall proceed to investigate the matter of the alleged violations pursuant to our earlier orders.