**Wesley P. BERNARD et al.,**
**Plaintiffs-Appellants,**

v.

**GULF OIL COMPANY et al.,**
**Defendants-Appellees.**

No. 77–1502.

United States Court of Appeals,
Fifth Circuit.

June 15, 1979.

Stella M. Morrison, Port Arthur, Tex., Ulysses Gene Thibodeaux, Lake Charles, La., Charles E. Cotton, New Orleans, La., Barry L. Goldstein, Washington, D. C., Jack Greenberg, Patrick O. Patterson, New York City, for plaintiffs-appellants.

William H. Ng, Atty., Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Jr., Assoc. Gen. Counsel, Charles L. Reischel, Asst. Gen. Counsel, Equal Employment Opportunity Commission, Washington, D. C., for E.E.O.C., amicus curiae.

Joseph H. Sperry, Wm. G. Duck, Kathleen M. Civins, Susan R. Sewell, U. S. Jones, Houston, Tex., for Gulf Oil.

Carl A. Parker, Michael D. Murphy, Port Arthur, Tex., for Oil, Chemical & Atomic Workers, Etc.

Before THORNBERRY, GODBOLD and HILL, Circuit Judges.

THORNBERRY, Circuit Judge:

Plaintiffs-appellants in this case are present or retired employees of defendant Gulf and claim that Gulf and the defendant unions have discriminated against plaintiffs and similarly situated black employees in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and the Civil Rights Act of 1866, 42 U.S.C. § 1981. The district court entered an order prohibiting the parties from communicating with class members and later granted defendants' motions for summary judgment.

Plaintiffs Bernard, Brown, and Johnson filed charges of discrimination with the EEOC in 1967 against Gulf and the local union.[1] The EEOC served copies of the charge on defendants in August, 1967, and issued a finding of reasonable cause in August, 1968. The EEOC actively pursued conciliation efforts with defendants until February, 1975, at which time it sent plaintiffs a notice stating that defendants did not wish to entertain conciliation discussions and advising plaintiffs that they could request a "Notice of Right to Sue" letter at any time.[2] The EEOC continued conciliation efforts on the basis of a Commissioner's charge filed in September 1967, which raised the same issues charged by plaintiffs. These efforts resulted in a conciliation agreement between the EEOC and Gulf in April, 1976. Plaintiffs filed this suit in May, 1976, and requested the Right-to-Sue letters from the EEOC. The EEOC issued the letters to Bernard and Brown in June,[3] and plaintiffs amended their complaint to reflect this fact in July, 1976.

1. Bernard also filed charges against the international union in 1976, but the EEOC dismissed this charge as untimely. Apparently, this was the only charge any of the plaintiffs filed against the international union. Although these facts may have some relevance to the merits of the action or scope of relief against the international union, the parties did not discuss that possibility before this court. Therefore, although the district court may decide differently after further examination on remand, on this appeal we will discuss the issues raised as if they were equally applicable to all defendants.

2. These first letters stated:
 On February 19, 1975, the Equal Employment Opportunity Commission's Houston District Office received notice from Gulf Oil Company—U.S. and Oil, Chemical and Atomic Workers, International Union Local 4–23, the Respondents in the above captioned matter, that they do not wish to entertain conciliation discussions to resolve those issues set out under the Commission's Decision as issued on August 15, 1968. You are hereby notified that you may request a "Notice of Right to Sue" from this office at any time. If you so request, the notice will be issued, and you will have ninety (90) days from the date of its receipt to file suit in Federal District Court.

It is advisable that, if you wish to pursue this matter further, you have an attorney ready to proceed with the case prior to issuance of the Notice of Right to Sue. If you do not have an attorney and you wish to proceed in Federal District Court with your case, then call this office for assistance in securing private legal counsel.

3. The Right-to-Sue letters stated:
 *NOTICE OF RIGHT TO SUE*
 *WITHIN 90 DAYS*
 Pursuant to Section 706(f) of the Civil Rights Act of 1964, as amended, you are hereby notified that you may, within ninety (90) days of receipt of this communication, institute a civil action in the appropriate Federal District Court. If you are unable to retain a lawyer, the Federal District Court, in its discretion, may appoint a lawyer to represent you and to authorize commencement of the suit without payment of fees, costs, or security. If you decide to institute suit and find you need assistance, you may take this notice, along with any correspondence you have received from the Commission, to the Clerk of the Federal District Court nearest to the place where the alleged discrimination occurred, and request that a Federal District Judge appoint counsel to represent you.

Soon after they filed the complaint, plaintiffs' attorneys appeared at a meeting of Gulf employees, during which they discussed this case. As a result of this meeting, Gulf requested the court to enter an order restricting the parties' or counsels' communication with class members. Gulf accompanied this request with an unsworn assertion that plaintiffs' attorneys had told the employees at the meeting it would be against their interest to accept the back pay award offered pursuant to the conciliation agreement. Plaintiffs' attorneys adamantly denied that they had urged the employees to reject the conciliation agreement. The court granted Gulf's motion without making any findings.[4] Defendants then moved to dismiss the complaint. In November, 1976, the court ordered that the motion be treated as a motion for summary judgment, and granted summary judgment for defendants in January, 1977. Plaintiffs raise four issues on this appeal.

## I.

■ The district judge dismissed plaintiffs' Title VII claim because plaintiffs failed to file suit within 90 days of receiving the first letter, which stated that conciliation efforts had failed and that plaintiffs could request a Notice-of-Right-to-Sue letter. The judge held "that the 90 day period for filing suit begins when the notice of failure of conciliation is sent by the EEOC." Since the trial court opinion in this case, however, this court has held differently. In *Zambuto v. American Tel. & Tel. Co.,* 544 F.2d 1333 (5 Cir. 1977), a panel of this circuit noted that the statute imposing the 90 day limitation could be read to begin the 90 day period on receipt of a notice that the EEOC has either failed to file a civil action or has not arrived at a conciliation agreement. That court stated, however, that the limitations period does not begin to run until the EEOC has notified the claimant "of both the failure of conciliation and the EEOC's decision not to sue in order to indicate clearly that the administrative process has been completed." *Id.* at 1335. *Accord*

*Turner v. Texas Instruments, Inc.,* 556 F.2d 1349 (5 Cir. 1977); *Page v. U. S. Indus., Inc.,* 556 F.2d 346 (5 Cir. 1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978). Furthermore, the *Zambuto* panel held that the final paragraph of the initial letter informed Mrs. Zambuto that "the EEOC was awaiting [her] request for issuance of a right-to-sue letter. Implicit in this latter statement is the assurance that the 90 day period would not commence until this letter was requested and dispatched. Because this paragraph declared that further administrative action was contemplated by EEOC, it failed to furnish Mrs. Zambuto (or AT&T) with the form of notice required under § 2000e–5(f)(1) to start the 90 day period for filing suit." 544 F.2d at 1335. Because the two-letter procedure allowed the claimant to postpone filing suit, the *Zambuto* panel declared the procedure invalid. Because the use and wording of the two letters was "patently misleading," however, that panel made its ruling prospective only.

■ At oral argument, defendants conceded that the present case is directly controlled by *Zambuto* and the cases following it. Plaintiffs filed suit before the *Zambuto* decision, and the letters plaintiffs received are indistinguishable from those involved in *Zambuto, Page,* and *Turner.* As in *Turner* and *Page,* the first letter plaintiffs received informed them only that conciliation efforts had failed; it did not indicate that the EEOC had decided not to sue. Also, as in *Page* and *Zambuto,* the concluding paragraph of the first letter assured plaintiffs that the 90 day period would not commence until plaintiffs received the second letter. Because the letters to the plaintiffs in this case were as "patently misleading" as those in prior cases, the 90 day period for filing suit did not begin until receipt of the second letter. Plaintiffs filed suit within this period. Therefore, the district court erred in dismissing the individual Title VII claims of Bernard and Brown. Also, because the claims of these class representatives are

4. This order is set out in footnote 9, *infra.*

properly before the court, the district court erred in dismissing the class claims and the claims of the other named plaintiffs who did not file a complaint with the EEOC. *Wheeler v. American Home Prod.*, 563 F.2d 1233 (5 Cir. 1977); *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496 (5 Cir. 1968).

## II.

The district judge also granted summary judgment in favor of defendants on plaintiffs' § 1981 claim. The trial judge found that plaintiffs' complaint alleged only "the identical pattern of discrimination which was the subject of the Bernard, Brown and Johnson EEOC complaint, which pattern has long since been eliminated." In addition, the court found as a fact that there were no continuing acts of discrimination.

 Defendants make two arguments in support of this holding. First they assert that the trial court properly granted summary judgment in their favor because plaintiffs failed to respond properly to defendants' summary judgment motion. Plaintiffs assert that defendants have discriminated in the past and presently continue to discriminate against blacks in hiring, assignment, promotion, training, recruiting, discipline, and discharge. Defendants argue that "appellants wholly failed to offer factual support for their assertions." Defendants-appellees brief at 18. Defendants misunderstand the summary judgment practice. Under Fed.R.Civ.P. 56, the moving party has the initial burden of proving that there is no genuine issue of material fact. If the movant wishes to dispute the allegations of the complaint, he must do so through affidavits, documents, or other evidence. Unless and until the movant initially provides factual support for the summary judgment motion, the opposing party has no duty to respond to the motion or to present opposing evidence. *Boazman v. Economics Lab., Inc.*, 537 F.2d 210 (5 Cir. 1976). In the present case, defendants presented a great number of affidavits with their summary judgment motion, but in none of the affidavits did defendants deny that they are discriminating against blacks. Therefore, the

trial judge's ruling that there were no instances of continuing discrimination was unsupported by the summary judgment record. Defendants, as the parties requesting summary judgment, failed to meet their burden of showing the absence of any material issue of fact.

 Defendants also argue that even if the facts plaintiffs allege are true, we must dismiss plaintiffs' § 1981 claim. In support of this contention, defendants argue primarily that the applicable statute of limitations is that provided by Tex.Rev.Civ. Stat.Ann. art. 5526, *Johnson v. Goodyear Tire & Rubber Co.*, 491 F.2d 1364, 1379 (5 Cir. 1974), and that under Texas law, the statute of limitations begins to run when the elements necessary for the cause of action first coalesce, regardless of whether defendants later commit other acts of the same nature. Under defendants' theory, the statute of limitations would have expired on plaintiffs' claim two years after defendants began discriminating against blacks, even if defendants continued such discrimination to the time plaintiffs filed this action. This argument is frivolous. Under both Texas and federal law, the relevant date for the purposes of the statute of limitations is the *last* date on which defendants improperly harmed plaintiffs. Furthermore, plaintiffs may collect damages for any wrongful acts defendants committed within the limitations period. *E. g., Marlowe v. Fisher Body*, 489 F.2d 1057, 1063 (6 Cir. 1973); *Macklin v. Spector Freight Systems, Inc.*, 156 U.S.App.D.C. 69, 77, 478 F.2d 979, 987 (1973); *United States v. Georgia Power Co.*, 474 F.2d 906, 924 (5 Cir. 1973); *Alexander & Polley Const. Co. v. Spain*, 477 S.W.2d 301 (Tex.Civ.App.—Tyler 1972 no writ); *Goldman v. Ramsay*, 62 S.W.2d 176 (Tex.Civ.App.—Texarkana 1933 error dism'd). Defendants' reliance on *Kittrell v. City of Rockwall*, 526 F.2d 715 (5 Cir.), cert. denied, 426 U.S. 925, 96 S.Ct. 2636, 49 L.Ed.2d 379 (1976), is unfounded. That case turned on the rule, peculiar to trespass cases, that the statute of limitations begins to run on the date when the trespassers first entered the land, even if

they continue to use the land after that date. *Baker v. City of Fort Worth,* 146 Tex. 600, 210 S.W.2d 564 (1948). This rule cannot be applied when defendants, as in this case, continue to violate plaintiffs' rights with new and distinct actions.

■ Therefore, the district judge erred in holding that the statute of limitations totally barred plaintiffs' § 1981 claim. Plaintiffs' cause of action and any recovery they may receive, however, must be limited to those violations occurring within the two year period immediately preceding the filing of the complaint or thereafter.

### III.

In addition to holding that statutes of limitations barred plaintiffs' claims, the district court "acknowledge[d] a most compelling argument for the equitable doctrine of laches in this particular case . . . ." Because we disagree with the court's ruling on the legal defenses, we find it necessary to discuss this alternative theory in support of the judgment below. *Lowe v. Pate Stevedoring Co.,* 558 F.2d 769, 770 n. 2 (5 Cir. 1977).

■ In *Franks v. Bowman Transp. Co.,* 495 F.2d 398, 406 (5 Cir. 1974), *rev'd on other grds.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), this court held that the doctrine of laches is applicable to Title VII and § 1981 actions brought by private plaintiffs, even if the legal limitations periods have not run. To apply laches in a particular case, the court must find both that the plaintiff delayed inexcusably in bringing the suit and that this delay unduly prejudiced defendants. *Save Our Wetlands, Inc. v. U.S. Army Corps of Engineers,* 549 F.2d 1021, 1026 (5 Cir.), *cert. denied,* 434 U.S. 836, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977). We conclude that the evidence before the court on this summary judgment motion does not

allow a finding that either of these elements exists.[5] Defendants argue that plaintiffs were aware of their cause of action at least as early as 1967 when they filed their initial charges against defendants with the EEOC. They also assert that plaintiffs could have requested a Notice of Right to Sue from the EEOC and filed a private action in 1970. 35 Fed.Reg. 10006 (June 18, 1970) (currently at 29 C.F.R. 1601.256 (1977)). Defendants therefore argue that plaintiffs' failure to file a complaint with the district court until 1976 "shows conclusively that they have slept on their rights." Defendants-appellees' brief at 28. The only justification plaintiffs offer for this nine-year delay in filing suit is their asserted right to await the completion of the EEOC administrative process. The issue before us, therefore, is whether plaintiffs' failure to file a private action until after the termination of the EEOC's active, continuing administrative process is unreasonable.

The Supreme Court in *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), discussed a similar issue. The employer-defendant in *Occidental Life* claimed that either federal or state statutes barred the EEOC from initiating suit more than three years after a claimant had filed a charge with the EEOC. In language particularly applicable to the present case, the Court indicated: "When Congress first enacted Title VII in 1964 it selected '[c]ooperation and voluntary compliance . . . as the preferred means for achieving' the goal of equality of employment opportunities." *Id.,* 97 S.Ct. at 2455. A legislative analysis of the 1972 amendments to Title VII is similar:

> It is hoped that recourse to the private lawsuit will be the exception and not the rule, and that the vast majority of complaints will be handled through the of-

---

5. Which party has the burden of proof on the issues of laches is somewhat unclear. *See* G. Gilmore & C. Black, The Law of Admiralty 771–76 (2d ed. 1975); *Law v. Royal Palm Beach Colony,* 578 F.2d 98, 101 (5 Cir. 1978); *Wheat v. Hall,* 535 F.2d 874, 876 (5 Cir. 1976). The determination is complicated by the fact

that the question has arisen most often in admiralty cases, which may not be entirely controlling in the present case. We find it unnecessary to decide this issue, however, because the facts as presented on this summary judgment motion, without more, do not allow a finding of laches.

fices of the EEOC or the Attorney General, as appropriate. However, as the individual's right to redress are paramount under the provisions of Title VII it is necessary that all avenues be left open for quick and effective relief.

118 Cong.Rec. 7565 (1972).

■■■ These statements clearly indicate that the private remedy allowed by 42 U.S.C. § 2000e–5(f)(1) is only an alternative method for a plaintiff to obtain relief from discrimination. A plaintiff cannot be penalized for choosing to forgo this alternative and electing instead the legislatively and judicially favored method of relying on the administrative processes of the EEOC.[6] We therefore hold that plaintiffs' failure to file their Title VII claim until completion of the EEOC process was not inexcusable delay and could not support the application of laches.

■ Plaintiffs' § 1981 claim is in a slightly different posture. We have already decided that the state statute of limitations prevents plaintiffs from asserting claims arising more than two years before the filing of the complaint. Therefore, any delay occurring before that period is irrelevant to the § 1981 claim. Defendants have not alleged that plaintiffs delayed inexcusably in asserting the claims arising within those two years. Therefore, it is unnecessary for us to consider whether laches could be invoked to bar those claims arising within the legal limitations period.

■■■ We also conclude that, on the evidence presented, any prejudice suffered by defendants was caused not by plaintiffs' delay but by defendants' own actions. In the only affidavit supporting this element of defendants' summary judgment motion, the personnel director of Gulf indicated that since the date when plaintiffs allege the violations began, defendant Gulf has made several personnel changes, a number of management personnel have retired, and two personnel managers have deceased. These statements are insufficient grounds on which to base a finding of prejudice. The fact that there have been personnel changes or that employees have retired is irrelevant unless those employees are unavailable. *Akers v. State Marine Lines, Inc.*, 344 F.2d 217, 221 (5 Cir. 1965).

■■ The affidavit does indicate that two former personnel managers have died and that those employees' knowledge is irreplaceable. Gulf asserts the live testimony of these employees is necessary, however, only because it has destroyed the written records of the personnel decisions made from 1965 through 1974. Defendants argue that they cannot now adequately defend against plaintiffs' charges without reference to these destroyed records. The EEOC informed defendants of the charges in 1967. Pursuant to its normal document retention plan, Gulf retained documents for only four years. Thus, Gulf did not destroy the documents relevant to the claims arising in 1965 until 1969, two years after Gulf learned of the charges. A party cannot assert the defense of laches merely because it has failed to preserve evidence despite knowledge of a pending claim. *American Marine Corp. v. Citizens Cas. Co.*, 447 F.2d 1328 (5 Cir. 1971).[7] This rule is of even greater

---

6. As stated in *Sangster v. United Air Lines*, 438 F.Supp. 1221 (N.D.Cal.1977):

 Mrs. Sangster's reliance on the EEOC to conciliate her dispute with United cannot be characterized as lack of diligence on her part in view of the strong federal policy favoring such reliance. She cannot be found chargeable with neglect which would bar her right to bring this action when, trusting in the good offices and promise of her government to seek resolution of her complaint, she commits that grievance to its care.

7. The concluding statements of the Supreme Court in *Occidental Life* are again relevant:

The absence of inflexible time limitations on the bringing of lawsuits will not, as the company asserts, deprive defendants in Title VII civil actions of fundamental fairness or subject them to the surprise and prejudice that can result from the prosecution of stale claims. Unlike the litigant in a private action who may first learn of the cause against him upon service of the complaint, the Title VII defendant is alerted to the possibility of an enforcement suit within 10 days after a charge has been filed. This prompt notice serves, as Congress intended, to give him an opportunity to gather and preserve evidence in anticipation of a court action.

validity in this case than in most. Since 1966, the EEOC has maintained a regulation prohibiting those charged with Title VII violations from destroying records relevant to the charge. 31 Fed.Reg. 2833 (Feb. 17, 1966) (currently at 29 C.F.R. 1602.14 (1977)). Therefore, defendants' argument that plaintiffs' delay prejudiced defendants is without merit. Insofar as defendants have been prejudiced, the evidence before the court shows that defendants' own negligence and disregard of EEOC regulations caused the prejudice.[8] We conclude that the present facts do not allow findings of either unreasonable delay or prejudice. Therefore the doctrine of laches is inapplicable.

> Moreover, during the pendency of EEOC administrative proceedings, a potential defendant is kept informed of the progress of the action. Regulations promulgated by the EEOC require that the charged party be promptly notified when a determination of reasonable cause has been made, 29 CFR § 1601.19b(b), and when the EEOC has terminated its efforts to conciliate a dispute, *id.*, §§ 1601.23, 1601.25.
> 97 S.Ct. at 2458.

8. Defendants admit that plaintiffs' § 1981 claims are nearly identical to their Title VII claims. Defendants could therefore disprove the claims with the same evidence. Since the EEOC regulations required defendants to maintain all records relevant to the Title VII claims, defendants could not have been prejudiced with respect to either Title VII or § 1981.

9. The order provided:
IT IS ORDERED:
(1) That Gulf's motion to modify Judge Steger's Order dated May 28, 1976 is granted;
(2) That Judge Steger's Order dated May 28, 1976 be modified so as to read as follows:
In this action, all parties hereto and their counsel are forbidden directly or indirectly, orally or in writing, to communicate concerning such action with any potential or actual class member not a formal party to the action without the consent and approval of the proposed communication and proposed addressees by order of this Court. Any such proposed communication shall be presented to this Court in writing with a designation of or description of all addressees and with a motion and proposed order for prior approval by this Court of the proposed communication. The communications forbidden by this order include, but are not limited to, (a) solicitation directly or indirectly of legal representation of potential and actual class members who are not formal par-

## IV.

■ Because we are remanding this case for further action, it is necessary that we consider the propriety of an order the district judge entered restricting the parties' communication with the members of the putative class. Judge Steger, in Chief Judge Fisher's absence, originally entered an order generally prohibiting all communication without exception. Chief Judge Fisher later modified the order. It is of this later order that plaintiffs complain on appeal. The modified order was explicitly modeled on those suggested by the Federal Judicial Center in the Manual for Complex Litigation, Part 2, § 1.41 (1977).[9] Plaintiffs

ties to the class action; (b) solicitation of fees and expenses and agreements to pay fees and expenses from potential and actual class members who are not formal parties to the class action; (c) solicitation by formal parties to the class action of requests by class members to opt out in class actions under subparagraph (b)(3) of Rule 23, F.R.Civ.P.; and (d) communications from counsel or a party which may tend to misrepresent the status, purposes and effects of the class action, and of any actual or potential Court orders therein which may create impressions tending, without cause, to reflect adversely on any party, any counsel, this Court, or the administration of justice. The obligations and prohibitions of this order are not exclusive. All other ethical, legal and equitable obligations are unaffected by this order.

This order does not forbid (1) communications between an attorney and his client or a prospective client, who has on the initiative of the client or prospective client consulted with, employed or proposed to employ the attorney, or (2) communications occurring in the regular course of business or in the performance of the duties of a public office or agency (such as the Attorney General) which do not have the effect of soliciting representation by counsel, or misrepresenting the status, purposes or effect of the action and orders therein.

If any party or counsel for a party asserts a constitutional right to communicate with any member of the class without prior restraint and does so communicate pursuant to that asserted right, he shall within five days after such communication file with the Court a copy of such communication, if in writing, or an accurate and substantially complete summary of the communication if oral.

(3) That Gulf be allowed to proceed with the payment of back pay awards and the obtaining of receipts and releases from those employees covered by the Conciliation Agreement dated

argue that the order was improper for several reasons. First, they assert that it is inconsistent with the policies of Rule 23 of the Federal Rules of Civil Procedure and therefore beyond the powers of the district court. We reject that argument and hold that the order was a permissible exercise of the trial court's discretionary power in controlling a class action.

As one noted treatise states:

Because class actions tend to be extremely complicated and protracted, their management and disposition frequently require the exercise of considerable judicial control and ingenuity in the framing of orders relating to various aspects of the case. Rule 23(d) provides the trial court with extensive discretion in achieving this objective and offers some guidance as to the types of problems the district judge is likely to encounter.

7A C. Wright & A. Miller, Federal Practice & Procedure § 1791 at 193 (1972).[10]

■ We believe the trial judge could have easily concluded that his interest in and duty of controlling the suit in this manner outweighed any interest plaintiffs' attorneys may have in communicating with members of the putative class without the prior approval of the court. Rule 23 imposes on the trial judge the duty of assuring that a class action is an appropriate way to resolve the controversy, the representative parties will fairly and adequately protect the interests of the class, the pleading and trial of the case is conducted fairly and efficiently, and any settlement or compromise is not unfavorable to the class.[11] The

April 14, 1976, between Gulf, the U.S. Equal Employment Opportunity Commission and the Office for Equal Opportunity, U.S. Department of the Interior; That the private settlement of charges that the employer has violated Title VII is to be encouraged, *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976).

(4) That the Clerk of the Court mail a notice to all employees of Gulf at its Port Arthur Refinery who are covered by the Conciliation Agreement and who have not signed receipts and releases for back pay awards informing them that they have 45 days from the date of the Clerk's notice to accept the offer as provided for by the Conciliation Agreement or such offer will expire until further order of the Court;

(5) That the contents of the notice be the same as that set out in Appendix I;

(6) That Gulf bear the expense of mailing the notice and a copy of the Court's order to the individuals covered by item (4) above;

(7) That all employees who have delivered receipts and releases to Gulf on or before 55 days from the date of the Clerk's notice shall be deemed to have accepted the offer as contained in the Conciliation Agreement;

(8) That any further communication, either direct or indirect, oral or in writing (other than those permitted pursuant to paragraph (2) above) from the named parties, their representatives or counsel to the potential or actual class members not formal parties to this action is forbidden;

(9) That Gulf inform the Court 65 days from the date of the Clerk's notice to be sent by the Clerk of the Court of the names of potential or actual class members who have accepted the offer of back pay and signed receipts and releases pursuant to the Conciliation Agreement and the names of those who have refused or failed to respond.

It is Plaintiff's contention that any such provisions as hereinbefore stated that limit communication with potential class members are constitutionally invalid, citing *Rodgers v. United States Steel Corporation*, 508 F.2d 152 (3rd Cir. 1975), *cert. denied*, 420 U.S. 969, 95 S.Ct. 1386, 43 L.Ed.2d 649 (1975). This Court finds that the *Rodgers* case is inapplicable, and that this order comports with the requisites set out in the *Manual for Complex Litigation*, Section 1.41, p. 106 CCH Edition 1973, which specifically exempts constitutionally protected communication when the substance of such communication is filed with the Court.

10. *See In Re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1012 n. 8 (5 Cir. 1977): "In class actions we recognize, indeed insist upon, the court's participation as the manager of the case."

11. Thus, although in the ordinary non-class suit, restrictions such as those in the present case might be entered in the form of a temporary injunction and only after relatively strict scrutiny of specific criteria, the drafters of the Rules felt that the trial judge needed broader powers with respect to class actions and specially imbued the district court with more extensive authority to control the suit.

present order could be helpful in exercising many of these duties, especially those of assuring fairness and efficiency. Any communication between the parties and class members may mislead the class members by appearing to reflect the opinion of the court rather than that of the party making the communication. This danger exists "simply because of references to the title of the court, the style of the action, the name of the judge, and to official processes." Manual for Complex Litigation, Part 1, § 1.41 at 27 (C. Wright & A. Miller ed. 1977). The trial court should therefore have the power to examine any communication in order to assure that class members will not be misled in this manner. Even apart from any references to the court, communications to potential class members by the parties may unfairly represent facts or issues relevant to the action. When those communications are sent during a limited period in which class members may opt out of the class, or, as here, in which they may accept a back pay offer pursuant to a conciliation agreement, any misleading statement may be irreparable. The trial judge may also believe that requiring prior approval of communications will reduce the risk of the class members becoming confused by an avalanche of notices, inquiries, and arguments directed to them by each of the parties to this action. Thus, there are many substantial reasons a trial judge may believe that an order such as that suggested in the Manual for Complex Litigation is justified.[12]

Plaintiffs assert their interests outweigh these concerns of the trial judge. Plaintiffs argue that to conduct the action adequately they must be allowed to contact class members in order both to discover their case and to inform class members of their civil rights. They allege that the order prevents them from performing those functions. This is not true; the order only prohibits contact with class members without prior approval of the court. Therefore, only plaintiffs' interest in *unrestrained* communications is to be balanced against the court's interests in requiring court approval of all communications sent to class members.

Plaintiffs' ability to discover their case is in no way reduced by the requirement that the court approve any contact. It is expected that the trial judge will exercise "minimal judicial control of these communications . . . ." and freely allow discovery. Manual for Complex Litigation, Part 1, § 1.41 at 29 (C. Wright & A. Miller ed. 1977). The trial judge should refuse to allow only those attempts at discovery that would clearly affect the fairness or efficiency of the litigation adversely. Plaintiffs have not shown that this "minimal control" would prejudice them in any way. Therefore, we do not believe plaintiffs have any significant interest in seeking discovery without the prior approval of the court. Similarly, to the extent that Rule 23 implicitly provides plaintiffs with a right to "encourag[e] common participation in the litigation of [plaintiffs' race] discrimination claim," *Coles v. Marsh,* 560 F.2d 186, 189 (3 Cir.), *cert. denied sub nom., Blue Cross v. Marsh,* 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977), that same rule's explicit grant of authority to the trial court to control the conduct and settlement of the action outweighs plaintiffs' right. Therefore, although there may be other methods of achieving similar results,[13] Rule 23 does not prohibit a trial court's discretionary use of

---

**12.** The Manual enumerates other potential abuses that may justify the use of such an order, for example: solicitation of direct legal representation of potential and actual class members who are not formal parties to the class action; and solicitation of funds and agreements to pay fees and expenses from potential and actual class members who are not formal parties to the class action. Arguably these concerns are not significant in this case in which the potential class is represented by a non-profit organization whose fees are not paid directly by the class members.

**13.** *Compare* Developments in the Law-Class Actions, 89 Harv.L.Rev. 1281, 1601–04 (1976), *with Waldo v. Lakeshore Estates, Inc.,* 433 F.Supp. 782, 792 n. 10 (E.D.La.1977).

an order requiring prior approval of communications with class members.[14]

■ Plaintiffs next argue that the order is an unconstitutional prior restraint on their communication with the class and is especially egregious in this case in which plaintiffs are represented by an organization highly regarded as an effective opponent of discrimination. This argument is considered and rejected in the recent revision of the Manual for Complex Litigation, Part 1, § 1.41 at 1–3 (C. Wright & A. Miller ed. 1978 Cum.Supp.) and in *Waldo v. Lakeshore Estates, Inc.*, 433 F.Supp. 782 (E.D. La.1977). We find it unnecessary, however, to decide whether the interests discussed above would also justify the prior restraint of any constitutionally protected communication. The order in the present case, unlike those in *Rodgers v. United States Steel Corp.*, 508 F.2d 152 (3 Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975), *Waldo* or the Manual, explicitly exempts communications that a party or counsel asserts are constitutionally protected from prior restraint.

■ Despite this provision, plaintiffs argue that the order chills their free exercise of protected activities because they can never be certain that the district court will agree with their assertion that the communication is protected.[15] As an example of such a disagreement, plaintiffs rely on an incident in the trial court. Plaintiffs submitted a document to the court for approval asserting that it was constitutionally protected. The judge refused to allow plaintiffs to send the document to the class members. Plaintiffs argue that if they had sent the document without submitting it they may have been subject to a contempt order. This argument is without merit. The exemption applies when the parties make any communication they *assert* is protected, not merely when the trial judge agrees with that assertion. Thus, as long as a party or counsel makes any unapproved contact with class members in the good faith belief that the contact is constitutionally shielded, he may not be punished for violating the court's order. Once plaintiffs submitted the proposed communication to the district judge, however, the exemption for communications they asserted were constitutionally protected was no longer relevant. At that point the issue became whether the Constitution, in fact, protected the communication rather than whether the plaintiffs had distributed it in the good faith belief that it was constitutionally protected. Plaintiffs have not argued on appeal that the trial judge erred in deciding that he could properly prohibit the distribution of that particular document nor have they alleged his determination was untimely. They have alluded to the incident only as an example of the alleged "chill" the order prohibiting unapproved communication placed on the exercise of their first amendment rights, notwithstanding the exception for communications they asserted to be constitutionally protected. Therefore, we need not decide whether the judge properly prohibited dissemination of this particular notice after plaintiffs submitted it for his approval. We note, however, that even though the prohibition on unapproved communications is permissible, the judge's sepa-

---

14. Because the trial judge made no findings of fact concerning plaintiffs' attorneys' alleged improprieties, the allegations are irrelevant to our decision. We hold that the trial judge had the power to restrict communications without regard to any allegations of unethical conduct. This holding is necessary because many of the dangers of abuse and irreparable harm discussed above can arise without warning. Requiring the district court to find specific evidence of the dangers in a particular case before acting would severely hamper its ability to control the case. In many instances, the abuses must not merely be punished, but must be prevented. This can be accomplished only if the trial judge can order the restrictions before the abuses have materialized.

15. *See* Note, 88 Harv.L.Rev. 1911, 1922 n. 74 (1975): The "proviso exempting constitutionally-protected communication does not eliminate—indeed it highlights—the overbreadth and resultant chilling effect of the Manual's proposed rule."

rate decisions approving or disapproving particular communications would normally be proper subjects for appellate review.

■ We conclude that the present order adequately safeguards the first amendment rights of the parties and counsel because even if the prohibitions of the order are vague or overbroad, the parties can avoid them if they assert a good faith belief that a particular communication is constitutionally protected. *Cf. Screws v. United States,* 325 U.S. 91, 101–02, 65 S.Ct. 1031, 1035–36, 89 L.Ed. 1495 (1945): "the requirement of specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid."

■ Plaintiffs' final contention is that the order violates their right to equal protection of the laws. This claim is based on the assertion that the order allows defendants to offer back pay settlements to the class members and to contact class members in the ordinary course of defendants' business without allowing plaintiffs similar rights. This argument is invalid because it is based on an incorrect reading of the order. The order prohibits defendants as well as plaintiffs from contacting the class members regarding back pay settlements. Rather than allowing further contact by either party, it directs the court clerk to distribute a notice to class members informing them that they have 45 days within which to accept the back pay award to which they are entitled under the conciliation agreement negotiated by the EEOC and directs them not to accept the award if they wish to participate in any recovery secured by plaintiffs in this action. Further, the provision allowing communication with class members in the regular course of

business applies equally to all parties and counsel, not merely to defendants. It could be argued that allowing contact in the regular course of business would tend to favor defendants in practice because of their greater day-to-day contact with the employees. Any management discussion of the merits of the suit with class members, however, would not be in the regular course of business. Therefore, although defendants may have greater day-to-day contact with the class members, the order does not allow defendants any greater freedom than plaintiffs in discussing the suit with class members.

We therefore conclude that the district court's order of June 22, 1976, is a permissible exercise of the court's power to control class action litigation and is prohibited by neither the first nor fifth amendments to the Constitution.

The judgment of the district court is REVERSED and the case REMANDED for proceedings consistent with this opinion.

GODBOLD, Circuit Judge, concurring in part and dissenting in part:

I concur in Parts I through III of the majority opinion. I dissent from Part IV, which upholds the validity of the district court's order restricting communications by named parties and their counsel with any actual or potential class member not a formal party.

The issue is important. The critical part of the order in question follows the form suggested in the Manual for Complex Litigation, 1977 ed., Pt. 2, § 1.41.[1] This case presents in this circuit for the first time the validity of such an order. Another circuit has taken a position contrary to the majority's decision.[2]

---

1. Sample Pretrial Order No. 15. The suggested form is a reprint of a pretrial order entered by the District Court for the Western District of Missouri. *Manual,* Pt. 2, § 1.41 n.33.

2. *Coles v. Marsh,* 560 F.2d 186 (CA3), *cert. denied,* 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977). *See also Rodgers v. United States Steel Corp.,* 508 F.2d 152 (CA3), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).

In other cases I have vigorously asserted the power of the district court to manage class actions and other complex cases.[3] But, in my opinion, the restraints imposed in this case contravene Rule 23, F.R.Civ.P., and violate freedom of speech and freedom of association as guaranteed by our Constitution.

### I. The history

Understanding the issues requires a more complete history than the brief statement made by the majority. In April 1976 Gulf and EEOC entered into a conciliation agreement covering alleged racial discrimination by Gulf against black employees at its Port Arthur, Texas plant, pursuant to which Gulf agreed to cease alleged discriminatory practices, establish an affirmative action program, and offer back pay to alleged discriminatees, ranging, for various employees and various periods, between $2.81 per month of service and $5.62 per month of service. The affected employees were not parties to the agreement. Gulf agreed to notify affected employees of the back pay agreed upon; failure of the employee to respond would be regarded as acceptance. According to Gulf, back pay was offered to 614 present and former black employees of the Port Arthur plant.[4]

In May 1976, while implementation of the conciliation agreement was in progress, six present or retired black employees of the Port Arthur plant brought this class suit, under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, on behalf of black employees, black former employees of the plant, and black applicants rejected for employment with Gulf Oil Company (not limited to the Port Arthur plant). Plaintiffs were represented by Stella Morrison, of Port Arthur, Charles E. Cotton, of New Orleans, and three New York attorneys from the NAACP Legal Defense and Education Fund, Jack Greenberg, Barry L.

Goldstein and Ulysses Gene Thibodeaux. Plaintiffs asked injunctive and declaratory relief and damages. The defendants are Gulf and the Oil, Chemical and Atomic Workers' Union. Plaintiffs charged that Gulf discriminated against blacks in hiring and job assignments, employed discriminatory tests, paid unequal pay, employed racially tainted promotion and progression practices, denied training to blacks, refused seniority to blacks, and discriminatorily discharged and disciplined blacks. They alleged that the union had agreed to, acquiesced in or condoned Gulf's discriminatory practices.

According to affidavits later filed by plaintiffs' counsel, a meeting of black employees who were members of the alleged class was held May 22 at the request of the named plaintiffs, plaintiffs' counsel were invited to attend, and some did attend. Gulf was served with process May 24. On May 27, before Gulf filed responsive pleadings, it filed a two-sentence, unsworn request that the court enter an order limiting communications by parties and their counsel with actual or potential class members. The motion was accompanied by an unsworn brief asserting that Ulysses Gene Thibodeaux, one of plaintiffs' attorneys, had recommended to actual and potential class members at a meeting that they not sign receipts and releases sent them pursuant to the conciliation agreement. Further, the brief said that it had been reported to Gulf that Thibodeaux advised the group that they should mail back to Gulf checks received pursuant to the conciliation agreement because he could recover twice as much for them by the pending suit. Gulf asserted in its brief that these actions violated standards imposed on attorneys by law and by the Canons of Ethics. It asserted that an order of the court was necessary to prevent further communication of the type alleged and that the statements by

---

3. *In re Air Crash Disaster at Florida Everglades,* 549 F.2d 1006, 1012 & n.8 (CA5, 1977); *Huff v. N. D. Cass Co.,* 485 F.2d 710, 712–13 (CA5, 1973) (en banc).

4. And 29 female employees.

plaintiffs' attorney would prejudice its defense of the case and the conciliation efforts. In its brief Gulf said that when the summons was served on it approximately 452 of the 643 employees entitled to back pay had received checks and executed general releases.

On May 28, after oral argument by the parties, District Judge Steger entered a temporary order effective until Chief Judge Fisher could return and assume control and administration of the case. His order is substantially the same as paragraph 2 of the modified order, which appears as note 9 of the majority opinion, that is, it contained the restraints without the exceptions. Judge Steger made no findings.

On June 8, Gulf filed an unverified motion to modify the temporary order to permit it to resume offering back pay awards and to receive receipts and releases, as provided by the conciliation agreement. Gulf added, again by an unsworn brief attached to its motion, a new allegation of misconduct by saying that it had been reported to Gulf that Thibodeaux had recommended to the persons at the meeting that even if an employee had signed a receipt and release he should return his check to Gulf. Gulf also filed an affidavit from EEOC stating that it felt the issues in this suit were "almost identical" to those embraced by the conciliation agreement.

Plaintiffs filed an unsworn responsive brief, squarely raising the constitutionality of the order and the district court's authority to issue it. Judge Fisher conducted a hearing on June 10 and allowed time for additional briefs. With their next brief plaintiffs filed affidavits by Thibodeaux, Morrison and Goldstein, covering several points. Thibodeaux denied that he advised potential class members not to accept Gulf's offer of settlement and denied that he stated that plaintiffs' counsel could get employees twice as much back pay by suit. According to the affidavits, none of the lawyers accepted or expected compensation from the named plaintiffs or any additional named plaintiffs or from members of the class; the only anticipated compensation was by attorneys' fees awarded by the court against the defendants, and in the case of the LDF attorneys any fees awarded them would be paid over to LDF. The affidavits also set out that it was necessary for plaintiffs and their counsel to communicate with members of the proposed class to investigate systematic and individual racial discrimination, complete discovery, and define issues in the case, and that, because of the back pay offers made by Gulf under the conciliation agreement, it was of crucial importance that plaintiffs' attorneys be able to inform class members of their rights and answer their questions and concerns. In their brief, plaintiffs asserted that many of the issues (specifying several of them) encompassed by the suit were not included within the matters covered by the conciliation agreement.

On June 22, without requiring Gulf to verify its charges of improper and unethical conduct by Thibodeaux, and without making findings of fact, Judge Fisher entered the modified order. He rejected plaintiffs' contention that the order was constitutionally invalid.

I turn to the contents of the modified order. Its opening language is plenary in form. I discuss below the exceptions that appear further on in the order.

The persons enjoined are "all parties hereto and their counsel."[5]

The subject matter forbidden is communications "concerning [this] action . . . without the consent and approval of the proposed communication and proposed addressees by order of this court." More specific communications which the proscription includes, but is not limited to, are: (a) solicitation of legal representation of poten-

---

5. The majority refer several times to the order's restricting communication *by the parties.* Elsewhere they refer to the interests of *plain-tiffs' attorneys* in communicating with putative class members. The order bars both named parties and counsel.

tial and actual class members not formal parties; (b) solicitation of fees and expenses; (c) solicitation of requests by class members to opt out; (d) "communications from counsel or a party which may tend to misrepresent the status, purposes and effects of the class action, and of any actual or potential Court orders therein which may create impressions tending, without cause, to reflect adversely on any party, any counsel, this Court, or the administration of justice."

The means of communication forbidden are "directly or indirectly, orally or in writing."

The persons with whom communication is forbidden are potential and actual class members.

The second subparagraph of ¶ (2) sets out exceptions as provided in the *Manual*'s suggested form: communications between attorney and client, and attorney and prospective client when initiated by the prospective client, and communications in the regular course of business. The third subparagraph of ¶ (2) is the "constitutional right" exception:

If any party or counsel for a party asserts a constitutional right to communicate with any member of the class without prior restraint and does so communicate pursuant to that asserted right, he shall within five days after such communication file with the Court a copy of such communication, if in writing, or an accurate and substantially complete summary of the communication if oral.

In the modified order Judge Fisher added to the *Manual*'s proposed form a provision that the clerk mail a notice to employees covered by the conciliation agreement stating that they had 45 days in which to accept Gulf's offer and that all who delivered receipts and releases within 55 days would be deemed to have accepted. See ¶ (4) and ¶ (9) of the order. In ¶ (8) the court restated the restraints on communication that it had imposed in the earlier part of the order.

On July 6, pursuant to the "constitutional right" exception, plaintiffs moved for permission for themselves and their counsel to communicate with members of the proposed class. They attached the following notice which they proposed to distribute and asserted that they were constitutionally entitled to distribute it:

Illustration to follow.

# ATTENTION BLACK WORKERS OF GULF OIL

The Company has asked you to sign a release. If you do, you may be giving up very important civil rights. It is important that you fully understand what you are getting in return for the release. IT IS IMPORTANT THAT YOU TALK TO A LAWYER BEFORE YOU SIGN. These lawyers will talk to you FOR FREE:

 STELLA M. MORRISON
 440 Austin Avenue
 Room 516
 Port Arthur, Texas 77640
 (713) 985-9358

 BARRY L. GOLDSTEIN
 ULYSSES GENE THIBODEAUX
 10 Columbus Circle
 Suite 2030
 New York, New York 10019
 (212) 586-8397

 CHARLES E. COTTON
 348 Baronne Street
 Suite 500
 New Orleans, Louisiana 70112
 (504) 522-2133.

These lawyers represent six of your fellow workers in a lawsuit titled Bernard v. Gulf Oil Co., which was filed in Beaumont Federal Court on behalf of all of you. This suit seeks to correct fully the alleged discriminatory practices of Gulf.

Even if you have already signed the release, talk to a lawyer. You may consult another attorney. If necessary, have him contact the above-named lawyers for more details. All discussions will be kept strictly confidential.

AGAIN, IT IS IMPORTANT THAT YOU TALK TO A LAWYER. Whatever your decision might be, we will continue to vigorously prosecute this lawsuit in order to correct all the alleged discriminatory practices at Gulf Oil.

---

Plaintiffs alleged in their motion that neither Gulf's offer to employees nor the notice sent by the clerk explained the terms of the conciliation agreement. They asked the court to declare that the notice was constitutionally protected. They noted that under the "constitutional right" exception to the order they were entitled to distribute the notice and file it with the court within five days thereafter. However, because of what they considered to be the vagueness of the order, and "for reasons of prudence," the plaintiffs asked for the court's guidance. Their reasons for asking guidance were not unreasonable. The first subparagraph of ¶ (2) of the order required that *any* proposed communication be presented in writing for prior approval. Paragraph (3) restated all the restraints. The "constitutional right" exception appeared to permit retrospective filing in place of prior court approval. But counsel already charged with unethical and illegal conduct cannot be faulted for electing not to gamble on their

interpretation of the order or upon the possibility that if they sent the notice without preclearance the court might find it not constitutionally protected and their assertion of constitutional protection not made in good faith.[6] As it turned out, their prudence was justified because the court ultimately denied permission to send the notice.

The request for guidance from the court, filed July 6, was appropriate and respectful, and it deserved timely court action. To be effective the notice that plaintiffs proposed to send needed to be distributed promptly. The 45 days for acceptance of Gulf's offer, described in the Clerk's notice, expired on or about August 8. The court did not act on plaintiffs' motion until August 10, when it denied the motion by a one-sentence order without explanation.

## II. Misuse of discretion

I believe that the court misused its discretion in entering the orders in this case.[7]

### (1.) Non-compliance with Rule 23(d)

Rule 23(d) gives the following authority to the court:

> In the conduct of actions to which this rule applies, the court may make *appropriate* orders: . . . (3) imposing conditions on the representative parties. (Emphasis added.)

This provision, added in 1966, gives the trial court "extensive power" to control the conduct of a class action. 7A C. Wright & A. Miller, Federal Practice and Procedure § 1791 (1972). There will be situations in which it will be "appropriate" for the court to restrict communications between counsel and potential class members. But, however, broad "appropriate" may be it is certainly no broader than the limits imposed by the Constitution, as discussed in Part III, below. Pretermitting constitutional limits, it seems to me that the district court must find that restrictions are "appropriate" upon a factual showing by the moving party that unsupervised communications between counsel and named plaintiffs on one hand and potential class members on the other have materialized into actual abuses of the class action device or that abuses are imminently threatened.[8] In this case, "appropriateness" was not proved and no finding of "appropriateness" was made by either district judge.

The only arguable grounds I perceive for the order's being "appropriate" are the unsworn statements by Gulf that were denied by plaintiffs' attorney under oath, the discussions in the *Manual* of possible abuses of class actions, and the existence of the conciliation agreement in the process of implementation.

With respect to the presence of plaintiffs' counsel at the meeting of employees, it seems to me singularly inappropriate for the district court to rely—if it did rely—upon Gulf's representations that Thibodeaux made statements which violated both the law and the Canons of Ethics. Gulf never presented proof of this hearsay. Under oath, Thibodeaux denied making such statements.[9]

---

**6.** See *Rodgers v. United States Steel,* 508 F.2d 152, 161 (CA3), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975): "The attorneys for the plaintiffs, with appropriate caution, declined to test an ambiguous order by violating it and risking contempt."

**7.** The district court had not adopted a local rule concerning limiting communications in class actions. We are, therefore, not concerned with rule-making power but with the authority of the court, inherent or conferred by Congress through the Rules, to impose the limit on communications. The *Manual,* Pt. 2, § 1.41, contains a suggested local rule, an earlier version of which was held invalid in *Rodgers v. United States Steel, supra.*

**8.** The Third Circuit in *Coles v. Marsh,* 560 F.2d 186, 189 (CA3), *cert. denied,* 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977), discussed the validity of a similar order restraining communications in terms of the district court's power and held it invalid. Although I reach the same result as the *Coles* court, I think it is preferable to analyze the question in terms of the district court's discretion.

**9.** In this appeal Gulf restates the hearsay as though it were fact proved and found. Also it throws in this alternative argument:

> By affidavit, one of the Appellants' attorneys admits to attending the discussions, but denies making any improper statements. Whether the statements, in fact, are true is

Nor should a judicial decision on "appropriateness" be rested upon the discussions in the *Manual.* With deference to the opinions of the distinguished Board of Editors concerning the possibility of abuses in class actions, a trial court should not merely presume that in the case before it—indeed in all class actions coming before it—abuses are either present or threatened.[10]

The order in this case was entered pursuant to the authority given the district court under Rule 23(d). That rule requires the district judge to exercise his discretion in making orders. He is only authorized to make "appropriate orders," and a determination of what is appropriate requires the exercise of discretion. What is appropriate for one case is inappropriate in another. If communications between counsel and actual and potential members of a class action were always abusive of the class action device then it would be appropriate to auto-matically enter an order restricting communications. Such communications, however, in many instances serve to effectuate the "purposes of Rule 23 by encouraging common participation in [a lawsuit]." *Coles v. Marsh, supra* at 189. The decision whether to restrict communications in a particular case, therefore, requires an inquiry into the likelihood of abuse and the potential for benefits. The *Manual*'s general discussion of potential abuses flowing from unrestrained communications is no substitute for reasoned inquiry into the harms and benefits on the particular facts of each case. The rule requires no less.[11] Here, at the appellate level, the majority grounds its decision on possibilities rather than actualities. It refers to what the parties "may do," to what the trial judge "could have easily concluded," how the order "could be helpful" to the judge in exercising his Rule 23 duties, to what the judge "may believe"

immaterial since the admitted appearance by Appellants' attorneys at such a meeting provides the potential for abuse of the class action process which the Manual and Rule 23 seeks to prevent.

Br. p. 42. Counsel for Gulf treat more lightly charging an attorney with unethical and improper conduct than I would be willing to do.

10. The *Manual* cites *Weight Watchers of Philadelphia v. Weight Watchers International, Inc.,* 455 F.2d 770 (CA2, 1972), as confirming an "almost unreviewable discretion" in trial courts to regulate communications between counsel and active and potential class members. *Weight Watchers* rests upon the unreviewability of discretionary orders by mandamus. The issue is before us by appeal. In *Rodgers,* the Third Circuit said:

[T]he committee which drafted the *Manual* probably went too far in its apparent assumption that *Craig v. Harney,* [331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947)] and *Bridges v. California,* [314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941)] would permit the vesting of unreviewable discretion in a district court to impose a prior restraint on communication or association. 1 J. Moore, [Federal Practice ¶ 1.41, at 29 n. 28, (2d ed. 1974, Part 2)].

508 F.2d at 165. *Rodgers* granted mandamus against use of a local rule then appearing in the *Manual* and since amended. I discuss in Part III, below, the constitutional limitations imposed by *Craig v. Harney* and *Bridges v. California.*

11. In *Waldo v. Lakeshore Estates, Inc.,* 433 F.Supp. 782 (E.D.La., 1977), the district court rejected the claim that it exceeded its rule-making authority under Rule 83 by adopting its Local Rule 2.12(e), identical to the *Manual*'s suggested Rule. The court concluded that "[t]he potential abuses attendant upon . . . unregulated communication clearly undermine the efficacy of the class action device." *Id.* at 794. The local rule was, therefore, consistent with the Federal Rules of Civil Procedure, the standard for judging the validity of a local rule. The difficulty with the district court's analysis is that Rule 2.12(e) applies to every case. It does not permit the district judge in an individual case the discretion to not restrict communications, although in some cases it would be inconsistent with the policies of the Federal Rules to restrict communication. A refined approach that does not sweep so broadly that it does away with the benefits of attorney-client contact and recognizes the interests that putative class members have in receiving communications is called for. The need for such an approach was recognized by District Judge Bue in his report accompanying the Southern District of Texas' amendments to its local rule restricting communications, discussed *infra.* Judge Bue's discussion focuses primarily on constitutional problems with the *Manual*'s rule. A similar need for a narrow rule that successfully guards against abuses while not doing away with the benefits of communication is also required so that it does not run afoul of Rule 83's mandate that district courts adopt only local rules that are consistent with the policies of the Federal Rules.

and of how communications "may mislead." This is not the stuff of which judicial decisions are made.

The final potential justification for the court's order is the strong emphasis upon settlement of Title VII disputes by conciliation rather than in the courtroom. *U. S. v. Allegheny-Ludlum Industries, Inc.,* 517 F.2d 826, 846 (CA5, 1975). But, as we noted in *Allegheny-Ludlum,*

> the "final responsibility for enforcement of Title VII is vested with federal courts," . . . [T]he various legal remedies for employment discrimination are cumulative and complementary. From the grievant's standpoint, "[u]nder some circumstances, the administrative route may be highly preferred over the litigatory; under others the reverse may be true."

*Id.* at 848 & n.26 (quoting *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147, 156 (1974), and *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 461, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295, 302 (1975)). In *Rodriguez v. East Texas Motor Freight,* 505 F.2d 40 (CA5, 1974), *vacated on other grounds,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), we commented on the possible divergence of governmental interests in remedying employment discrimination and the interests of the individuals who were the victims of discrimination:

> While the Government may be willing to compromise in order to gain prompt, and perhaps nationwide, relief, private plaintiffs, more concerned with full compensation for class members, may be willing to hold out for full restitution.

*Id.* at 66. The choice between the lawsuit and accepting Gulf's back pay offer and giving a general release was for each black employee to make. The court could not make it for him, nor should it freight his choice with restrictions that were not "appropriate" under the circumstances. Gulf

had represented to the court that the conciliation agreement was fair and embraced substantially the same issues as the suit. But plaintiffs' counsel had represented that the conciliation agreement was seriously deficient; that on its face it neither made the black employees whole nor satisfied the dictates of Title VII; that the relief supplied was inadequate because the goals were statistically improper, there was no firm commitment to timetables, and there was no relief from illegal testing. Plaintiffs had set out other objections as well. According to plaintiffs, the notices sent out by Gulf did not even explain how back pay was computed.

The conclusion is inescapable that the court's limitation on communications was intended to further employees' accepting conciliation awards in preference to participating in the suit.[12] Pretermitting whether a court can ever appropriately do this, in this instance it could not, in deciding "appropriateness," elect to favor conciliation and frustrate or chill the right of black employees to choose the litigation route by cutting them off from talking with the named plaintiffs and with the only attorneys who had direct expertise about the suit.

The majority has failed to take into consideration the benefits flowing from communication between the parties and the potential class members. In racial discrimination cases group solidarity may be vital to trigger and to sustain the willingness to resort to legal remedies for the removal of discrimination, but the court order bars black plaintiffs from all communication with fellow blacks employed by Gulf concerning this case. The majority also does not give weight to the need and desire of potential class members for advice of counsel concerning back pay versus lawsuit. The order permits a potential class member to confer with attorneys for plaintiffs at the prospective class member's request. Pragmatically this is a dubious exception.

12. If not otherwise clear, the court's approach was made clear by its direct entry into the conciliation effort (discussed below), and its withholding action on plaintiffs' request for permission to send the proposed notice until after the time had expired for accepting back pay awards.

A prospective class member must find out who the attorneys are and when and where to see them, but the actual class members are forbidden to give him this information—or any other information about the case—without prior court approval, nor can counsel furnish this information to potential class members generally.

The wide disparity between what was done here and normal judicial procedures is demonstrated by posing this question: "What would have happened if Gulf had asked for a temporary injunction imposing the exact restrictions that were imposed in this case?" I believe that the court would have insisted upon requirements of notice, time limits, proof of likelihood of harm, the public interest and similar familiar requirements, and this court would have reviewed an injunction under the usual standards, especially since constitutional rights are involved.

The limitations I suggest do not diminish the significance of the potential problems seen by the draftsmen of the *Manual* and by the majority here. I would simply require a showing that the problems are real and not imaginary.

To the extent the majority bases its approval of the lower court's orders on the premise that it is always appropriate to restrict communications in class actions, that premise is peculiarly unfounded in this case. The counsel silenced without factual showing include those from the Legal Defense Fund, recognized by the Supreme Court as having "a corporate reputation for expertness in presenting and arguing the difficult questions of law that frequently arise in civil rights litigation," *NAACP v. Button,* 371 U.S. 415 at 422, 83 S.Ct. 328 at 332, 9 L.Ed.2d 405 at 411–12 (1963), and engaged in "a different matter from the oppressive, malicious or avaricious use of the legal process for purely private gain." *Id.* at 443, 83 S.Ct. at 343, 9 L.Ed.2d at 424. *See also Miller v. Amusement Enterprises, Inc.,* 426 F.2d 534, 539 n.4 (CA5, 1970).

### *(2.) Court involvement in conciliation*

Apart from the order's limit on communications, it inappropriately involved the court in the extra-judicial conciliation effort. Gulf had mailed out back pay offers before suit was filed. In its motion to modify Judge Steger's order, Gulf asked the court to direct the clerk to send notices to all employees who had not accepted its offer and signed releases. Gulf's theory was that the court could do this under its power to supervise a settlement. The court granted the motion and extended the time for acceptance to 55 days from the date of the clerk's notice. The back pay offers were not offers to settle a lawsuit. The nudge given to black employees who had not accepted Gulf's offer, given under the official imprimatur of the court, was not permissible.

I would hold that the order was improvidently entered under the terms of Rule 23(d). Perhaps Rule 23(d) merely restates an implied power of the court. If that is so, exercise of the power is limited by the same restraints on the court's discretion that I have already discussed. I turn then to constitutional limitations.

### *III. The constitutional issues*

The general rule is that otherwise protected utterances concerning the courts may be punished by contempt only if they pose "an imminent, not merely a likely threat to the administration of justice." *Craig v. Harney,* 331 U.S. 367, 376, 67 S.Ct. 1249, 1255, 91 L.Ed. 1546, 1552 (1947). The likelihood must be great that a serious evil will result, and the evil itself must be substantial. *Bridges v. California,* 314 U.S. 252, 260–63, 62 S.Ct. 190, 192–94, 86 L.Ed. 192, 202–03 (1941). Significantly, it is these two cases to which the *Manual* turns in addressing constitutional limitations. Pt. 2, § 141, n.33. Nor does the constitutional rule change when applied to lawyers, even when they participate in the judicial process. *In re Halkin,* —— U.S.App.D.C. ——, 598 F.2d 176, 47 Cr.L.Rep. 2413 (1979). A lawyer's First Amendment rights to comment about pending or imminent litigation can be proscribed only if his comments pose a " 'serious and imminent threat' of inter-

ference with the fair administration of justice." *Chicago Council of Lawyers v. Bauer,* 522 F.2d 242, 249 (CA7, 1975), cert. denied, 427 U.S. 912, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976) (quoting *In re Oliver,* 452 F.2d 111 (CA7, 1971)); accord, *Chase v. Robson,* 435 F.2d 1059, 1061 (CA7, 1970); cf. *U. S. v. Tijerina,* 412 F.2d 661, 666 (CA10), cert. denied, 396 U.S. 990, 90 S.Ct. 478, 24 L.Ed.2d 452 (1969) (reasonable likelihood that comments by criminal defendants will prevent a fair trial justifies court order prohibiting extrajudicial comments).

In this case the subject matter of the restraint on counsel's right to talk with potential class members about the case is plenary. The restraint is not limited to prohibiting solicitation of potential clients, discussed below. The attorneys may not counsel a black employee free of any effort to solicit him. The Third Circuit, in *Rodgers,* in holding invalid a local rule that contained a similar prohibition on communications between counsel and potential class members [13] did not reach the constitutional issue but noted the problem:

> The imposition of such a condition upon access to the Rule 23 procedural device certainly raises serious first amendment issues. *See New Jersey State Lottery Comm'n v. United States,* 491 F.2d 219 (3d Cir.), cert. granted, 417 U.S. 907, 94 S.Ct. 2603, 41 L.Ed.2d 211 (1974). There is no question but that important speech and associational rights are involved in this effort by the NAACP Legal Defense and Education Fund, Inc. to communicate with potential black class members on whose behalf they seek to litigate issues of racial discrimination. *See, e. g., United Transportation Union v. State Bar,* 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971); *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). And the interest of the judiciary in the proper administration of justice does not autho-

rize any blanket exception to the first amendment. *See Wood v. Georgia,* 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962); *Craig v. Harney,* 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947); *Pennekamp v. Florida,* 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946); *Bridges v. California,* 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941). Whatever may be the limits of a court's powers in this respect, it seems clear that they diminish in strength as the expressions and associations sought to be controlled move from the courtroom to the outside world. *See* T. Emerson, The System of Freedom of Expression 449 et seq. (1970).

508 F.2d at 162–63.

Next I turn from the general restraint on the attorney to the specific restriction against solicitation in subparagraph (a) of ¶ 2 of the order: "[S]olicitation directly or indirectly of legal representation of potential and actual class members who are not formal parties to the class action." *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), and its progeny, *In re Primus,* 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978), *United Transportation Union v. State Bar of Michigan,* 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971), *United Mine Workers v. Illinois Bar Ass'n,* 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967), and *Railroad Trainmen v. Virginia State Bar,* 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964), mandate the conclusion that subparagraph (a) is unconstitutional. In *Button,* the Court concluded that NAACP solicitation of persons to bring civil rights suits was protected activity under the First and Fourteenth amendments. 371 U.S. at 428–29, 83 S.Ct. at 335, 9 L.Ed.2d at 415.[14] The solicitation was treated as a mode of political expression effectuated through group activity falling within the sphere of associational rights guaranteed by the First Amendment. The solicitation activities considered in *Button* included hold-

---

13. The local rule in issue in *Rodgers* did not include the "constitutional right" exception which has been added to the suggested form in the *Manual.* I discuss below that this does not remove the constitutional issue.

14. Because this case involves a restriction imposed by a federal court, the Fourteenth Amendment is not implicated.

ing meetings to explain legal steps needed to achieve desegregation. At these meetings forms were circulated which authorized LDF attorneys "to represent the signers in legal proceedings to achieve desegregation." 371 U.S. at 421, 83 S.Ct. at 332, 9 L.Ed.2d at 411.

In view of Gulf's statements to the trial court and the countering affidavit by plaintiffs' attorney, we do not know whether there has been express solicitation in this case similar to the distribution of forms in *Button*.[15] Whether plaintiffs' attorneys' attendance at the meeting was solicitation is not determinative. Here, as in *Button*, the subject matter is racial discrimination. Plaintiffs' attorneys are already engaged on behalf of black employees in seeking to vindicate their civil rights through court action, while in *Button* they were seeking clients to begin a suit. In both cases the activities at issue are those of LDF lawyers. The only material difference is that here employees must choose between the lawsuit and a conciliation offer while in *Button* there had been no conciliation and offer. The people attending the meetings held by the LDF lawyers in *Button*, however, did have to choose between initiating a lawsuit and not participating in a lawsuit. The type of choice the people would have to make here and in *Button* is not so different that the solicitation that could have occurred in this case was outside the scope of activity protected by *Button*. The characteristics of the solicitation that brought it within constitutional protection in *Button* are equally present in this case.

The continued vitality of *Button* was recently affirmed by the Supreme Court in *In re Primus, supra.* There the Court reversed a disciplinary reprimand issued against an ACLU lawyer for solicitation, 436 U.S. at 419, 98 S.Ct. at 1899, 56 L.Ed.2d at 427. The Court considered the economic relationship between the lawyer and the person solicited, the purpose of the litigation and the possibility of a conflict of interest between counsel and prospective client. Because the lawyer had no direct financial stake in the case, the case was a means of expressing a political belief, and there was no evidence of overreaching or misrepresentation, the Court concluded that South Carolina's punishment of Primus for solicitation violated her First Amendment rights.[16]

Because the activity prohibited by subparagraph (a) of the district court's order is constitutionally protected activity it is necessary to consider whether there is a compelling government interest that justifies the prohibition and whether the means used are sufficiently specific " 'to avoid unnecessary abridgment of associational freedoms.' " *Id.* at 432, 98 S.Ct. at 1905, 56 L.Ed.2d at 434–35 (quoting *Buckley v. Valeo*, 424 U.S. 1, 25, 96 S.Ct. 612, 637, 46 L.Ed.2d 659, 691 (1976)). The *Primus* Court recognized that "the prevention of undue influence, overreaching, misrepresentation, invasion of privacy, conflict of interest, [and] lay interference," 436 U.S. at 432, 98 S.Ct. at 1905, 56 L.Ed.2d at 435, are evils the state may guard against and that these problems sometimes result from lawyer solicitation of clients. The Court went on to state, however, that prophylactic rules intended to guard against such evils are not

---

**15.** The notice that plaintiffs asked leave to send does not explicitly solicit persons to engage plaintiffs' attorneys or to join in the class but urges employees to seek legal advice and to become informed. It tells employees that plaintiffs' attorneys will talk to them without charge, suggests as an alternative talking to some other attorney, and emphasizes that the class action will proceed. No one is expressly urged to join the class, reject a release, or return a check.

**16.** *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), decided the same day as *Primus*, sustained, against constitutional objections, bar sanctions of an attorney for solicitation. For purely pecuniary gain he visited in the hospital a person injured in an automobile accident and solicited her as a client. No political expression or associational rights or vindication of illegal racial discrimination was involved. Ohralik based his constitutional claim solely on the commercial speech doctrine. *See also Pace v. Florida*, 368 So.2d 340 (Fla.1979); *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175 (Penn.1978).

permissible when aimed against constitutionally protected forms of solicitation because of their impact on First Amendment rights. *Id.* When dealing with *Button*-type solicitation, as opposed to commercial forms of solicitation, *see Ohralik v. Ohio State Bar Association,* 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), discussed in note 16, *supra,* there must be a showing that the solicitation "in fact involved the type of misconduct" 56 L.Ed.2d at 436, that may be constitutionally guarded against. A showing of potential danger does not suffice.[17] The lower court made no findings whether the substantive evils the court was constitutionally entitled to guard against had occurred. Without such findings subparagraph (a) of the order cannot stand.[18]

Subparagraph (d) of ¶ 2 is applicable to this case and is in my view facially unconstitutional. It is narrower than the plenary proscription in the first sentence of the order, which prohibits all communications concerning the suit. Subparagraph (d) prohibits what might be called "objectionable communications." It prohibits all communications "which *may tend* to misrepresent [the class action] . . . and . . . which *may create* impressions tending, without cause to reflect adversely on any party, any counsel, this Court or the administration of justice." (Emphasis added.) The order is overbroad because it is not limited to the clear and present danger test. "May tend to misrepresent," and "may create impressions" are not enough to justify suppression of protected speech. *See Chicago Council of Lawyers v. Bauer, supra* at 249. Also, while speech that poses an imminent threat to the fair administration of justice may be properly prohibited, speech that reflects adversely on any party or counsel may not. The only interests to which the First Amendment may be subordinated are compelling government interests. The government has no compelling interest in assuring that nothing unflattering will be said about Gulf or its attorneys.

It seems to me unnecessary to dwell at length on the vagueness of the order, particularly subparagraph (d). In advising a

---

17. As stated by the *Primus* Court

> Rights of political expression and association may not be abridged because of state interests asserted by appellate counsel without substantial support in the record or findings of the state court. See *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 789, 98 S.Ct. 1407, [1423,] 55 L.Ed.2d 707 (1978); *United Transportation Union v. Michigan Bar,* 401 U.S., at 581, 91 S.Ct. 1076 [, at 1080] 28 L.Ed.2d 339; *Sherbert v. Verner,* 374 U.S. 398, 407, 83 S.Ct. 1790, [1795,] 10 L.Ed.2d 965 (1963); *Button,* 371 U.S. at 442–443, 83 S.Ct. 328 [, at 342–343], 9 L.Ed.2d 405; *Wood v. Georgia,* 370 U.S. 375, 388, 82 S.Ct. 1364, [1371,] 8 L.Ed.2d 569 (1962); *Thomas v. Collins,* 323 U.S. 516, 530, 536, 65 S.Ct. 315 [322, 325,] 89 L.Ed. 430 (1945).

436 U.S. at 434 n. 27, 98 S.Ct. at 1906 n. 27, 56 L.Ed.2d at 436 n. 27.

18. Subparagraph (b) of ¶ 2 of the order forbids solicitation of fees and expenses despite the affidavit setting out that the NAACP provides its services free of charge. Arguably this hypothetical restraint does no injury except to the extent it adds to the overall chilling effect. However, I think it is appropriate to comment on it since it is part of the *Manual*'s form. In *United Transportation Union v. State Bar of Michigan, supra,* the Supreme Court interpreted *Button* and cases following it to stand for the proposition that "collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment." *Id.* at 585, 91 S.Ct. at 1082, 28 L.Ed.2d at 347. In at least some situations the collection or solicitation of funds to defray litigation costs is a necessary adjunct to obtaining meaningful access to the courts. I would, therefore, give such activity constitutional protection in appropriate cases. The degree of protection would vary according to the use to which the funds are to be put. If they are to be used to pay lawyers, the solicitation presents some of the dangers recognized in *Primus* and *Ohralik* that a state or court may properly guard against. If the funds are to be used to defray litigation expenses, the solicitation is closer to the heart of gaining access to the courts. *See Norris v. Colonial Commercial Corp.,* 77 F.R.D. 672, 673 (S.D.Ohio, 1977) (solicitation of funds to defray litigation expenses of class action permitted with certain requirements imposed on the content of the solicitation letter). *See also Sayre v. Abraham Lincoln Federal Savings & Loan Ass'n,* 65 F.R.D. 379, 384–86 (E.D.Penn., 1974), *modified,* 69 F.R.D. 117 (1975).

Subparagraph (c) of ¶ 2, relating to solicitation of "opt out" requests, seems to me to have no application to this case. It applies only to Rule 23(b)(3) class actions, and this action was brought pursuant to 23(b)(2).

potential class member of the relative merits of class action versus back pay offered under the conciliation award, counsel will almost inevitably say something that will be construed to reflect upon Gulf's offer—indeed that is at the heart of this whole matter of lawsuit versus settlement. If counsel goes to an employees' meeting at all,[19] the only safe advice to him is to remain mute.

In a thoughtful analysis of the constitutional issues involved in this case, District Judge Boyle, in *Waldo v. Lakeshore Estates, Inc.*, 433 F.Supp. 782 (E.D.La., 1977), rejected a constitutional attack on his district's Local Rule 2.12(e) which is identical to the *Manual*'s suggested rule. The court recognized that its rule

> restricts not only certain expressions by parties and counsel, but also impinges upon the constitutionally-derived interest of the recipient(s) to secure the communication. . . . Likewise limited by the rule's operation is the opportunity of the plaintiff organization to communicate concerning legal redress with those members who are not formal parties to the suit, which activity ordinarily would be entailed in the freedom of association and the collective right of an organizational membership to achieve effective judicial access.

*Id.* at 787 (citations and footnote omitted). The court then went on to catalogue the interests served by the Local Rule: (1) prohibition of solicitation of representation or funds protects laymen from unscrupulous attorneys and helps preserve the legal profession's image; (2) preservation of the court's obligation "to direct the 'best notice practicable' to class members, advising them of their privilege to exclude themselves from the class," *id.* at 790, pursuant to Rule 23(c)(2) for class actions brought under Rule 23(b)(3); and (3) the administration of justice by preventing misrepresentations. *Id.* at 790–91. The court found these objectives sufficiently important to

override the inhibitions on First Amendment rights and that the rule is the least drastic alternative.

I have several problems with the district court's analysis. First, the three categories of interests served by the rule can be tied to the specific prohibitions. The court does not explain how the plenary prohibition against all communications absent prior approval serves the specified goals other than to note that "the ingenuity of those determined to wrongly take advantage of the class action procedure would likely prevail over any . . . attempt at prohibition by itemization." *Id.* at 791–92. I think the plenary prohibition in the first sentence of ¶ 2 of the order is facially overbroad. Communications that do not threaten any of the interests enumerated by the court are prohibited. When dealing with First Amendment rights, greater specificity is required.

District Judge Bue of the Southern District of Texas reached the same conclusion as I reach in his analysis of the amendments his district adopted to the *Manual*'s suggested rule. The Southern District's rule contains only the specific prohibitions, dropping the across-the-board restraints. The primary reason for the change was to avoid a violation of the First Amendment by overbreadth: "The key to a constitutional rule which regulates class communication is to narrow down those instances in which a prior restraint is imposed to those in which the types of communications subject to judicial review before dissemination are clearly defined and clearly capable of Rule 23 abuse." Bue, *Analysis of Proposed Revision of Local Rule 6 of the United States District Court for the Southern District of Texas,* (quoted in *Bulletin, Manual for Complex Litigation,* Federal Judicial Center, 9–10 (Aug. 25, 1978)).

Also, *Waldo* fails to distinguish between commercial forms of solicitation and *Button*-type solicitation. The significance of this distinction has already been discussed. Because the rule does not make this distinc-

---

**19.** Assuming merely being there is not "indirect communication" as Gulf would seem to contend, *see* n. 9, *supra.*

tion, its prohibition on solicitation is overbroad. The government interests that may legitimately be protected by prohibiting commercial solicitation do not usually need to be protected when *Button*-type solicitation is involved because it does not pose the same dangers as commercial solicitation. Moreover, the constitutional scrutiny given to a ban on commercial solicitation or punishment for engaging in such solicitation is significantly lower than the scrutiny given prohibitions on *Button*-type solicitation. Commercial solicitation is protected only by the commercial speech doctrine, which requires a lower level of scrutiny than required when there is an infringement of the constitutional rights of association and political expression which occurs when *Button*-type solicitation is prohibited. *Compare In re Primus, supra, with Ohralik v. Ohio State Bar Association, supra.*

The *Waldo* court's concern with protecting the administration of justice from misrepresentations of cases pending before it is legitimate. But the "reasonable likelihood" standard incorporated in the rule simply fails to comply with constitutional standards.

The proviso permitting post-distribution filing of a notice thought to be constitutionally protected is not a cure. "This provision does not eliminate—indeed it highlights—the overbreadth and resultant chilling ef-fect of the [*Manual's*] proposed rule." Comment, 88 Harv.L.Rev. 1911, 1922 n. 74 (1975). The majority's conclusion that the assertion of a good faith belief gives total protection is disingenuous. The district court would still be entitled to inquire into the bona fides of counsel's belief.[20] Because counsel may be called upon to establish the basis for his good faith belief, and therefore is put at risk for possibly violating the court's order, the good faith exception does not ameliorate the chilling effect of the order. It is little comfort for a conscientious attorney to be told that he may communicate with potential class members but that at a later time may be called upon by the court to justify the communication.[21] Even if facially a cure, the constitutional exception is no cure as applied to these plaintiffs who prudently asked for pre-distribution approval of the leaflet reproduced above rather than risk post-distribution filing and were given a belated denial.

## IV. Conclusion

The district court misused its discretion under Rule 23(d) and violated the constitutional rights of plaintiffs' counsel, named plaintiffs and all other actual or potential members of the class by entering the orders. I dissent from Part IV of the majori-

20. Although *Screws v. U. S.*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), probably requires a showing of specific intent to violate the court's order, that is certainly not the total protection from punishment envisioned by the majority; indeed, it indicates that assertion of good faith is not total protection.

21. The majority argues that "[o]nce plaintiffs submitted the proposed communication to the district judge . . . the exemption for communications they asserted were constitutionally protected was no longer relevant." The issue before the district court on a motion for permission to distribute would be whether the proposed communication is constitutionally protected, but the issue on this appeal is the constitutionality vel _ion of the order. In our examination of this issue, the constitutional exception provision is certainly relevant; indeed the unwillingness of the attorneys to rely on the exception in distributing the leaflet demon:. :ates the order's chilling effect. It is the proof of the pudding. Having lost on their motion to have the order restraining their communications declared unconstitutional, the reasonable—and respectful—course for them to follow was to ask the court's guidance before distributing the leaflet rather than take their chances under the constitutional exception. I assume that the majority does not mean that had the plaintiffs specifically renewed their constitutional objection to the order at the time they requested permission to distribute the leaflet the chilling effect of the order could not have been considered by the district court. Such a position would be untenable. It is not necessary to disobey a court order to be able to make a chilling effect attack on it. Indeed, the exact opposite is normally required. A party may not violate a court order and then in a contempt proceeding for violating the order challenge its constitutionality. *Walker v. City of Birmingham*, 388 U.S. 307, 316–17, 87 S.Ct. 1824, 1830, 18 L.Ed.2d 1210, 1217 (1967).

**1276**

ty opinion and would vacate the district court's order as modified.

JAMES C. HILL, Circuit Judge, specially concurring:

Being bound by the prior decisions of this Court, as I ought to be, I concur. *Beker Phosphate Corp. v. Muirhead*, 581 F.2d 1187, 1190 n. 10 (5th Cir. 1978).

My observations concerning the path upon which we embarked in *Zambuto v. American Telephone and Telegraph Co.*, 544 F.2d 1333 (5th Cir. 1977) are set out in my dissent to the opinion for the En Banc Court in *White v. Dallas Independent School District*, 581 F.2d 556, 563 (5th Cir. 1978) (Hill, J., concurring in part and dissenting in part).